*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0173p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                      *Plaintiff-Appellee,*

          *v.*

MICHAEL ANTHONY COLLINS,
                      *Defendant-Appellant.*

No. 10-6454

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 1:09-cr-10007-001—J. Daniel Breen, District Judge.

Argued: March 2, 2012

Decided and Filed: June 12, 2012

Before: MARTIN and MCKEAGUE, Circuit Judges; CALDWELL, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** William Joshua Morrow, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. James Powell, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee. **ON BRIEF:** William Joshua Morrow, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. James Powell, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

_____

**OPINION**

_____

CALDWELL, District Judge. Defendant-Appellant Michael Anthony Collins pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He appeals the district court's denial of his motion to suppress the gun and

---

[*]The Honorable Karen K. Caldwell, United States District Judge for the Eastern District of Kentucky, sitting by designation.

certain statements he made indicating the gun was his.  He also appeals the district court's decision that the government did not act arbitrarily or unconstitutionally when it failed to move for the additional one-level reduction in offense level for acceptance of responsibility provided in § 3E1.1(b) of the United States Sentencing Guidelines Manual.  For the following reasons, we **AFFIRM** the district court's judgment.

## I.  Background

Collins was a passenger in a Jeep that was pulled over for speeding in the early morning hours of November 30, 2008.  The police officers performing the traffic stop ultimately searched the car and found a gun.  In its opinion on Collins' motion to suppress, the district court found the following facts, none of which has been disputed by the parties:

> At approximately 2:30 A.M. on November 30, 2008, Officer [Shaun] Gary, a patrolman with the Jackson, Tennessee Police Department, was "running stationary radar" in his patrol car on Highland Avenue in Jackson – meaning that he was using his radar gun inside of his parked police cruiser.  The Jeep Cherokee in which the Defendant was a passenger passed Officer Gary, at which time he clocked the vehicle traveling fifty-five miles per hour in a forty-miles-per-hour zone.  He initiated a traffic stop, and [Orlando] Whisnant – the driver of the Jeep – pulled over on a nearby side street.  Neither Whisnant nor the Defendant owned the Jeep, which belonged to a mutual friend – Robert Smith – but they had borrowed it with Smith's permission.
>
> After pulling the Jeep over and making contact with the occupants, Gary returned to his police cruiser with Whisnant's driver's license and Collins's personal information. He was able to determine that there were no outstanding warrants on either individual, and that Whisnant's driver's license was valid. Because Whisnant admitted that he had been drinking earlier in the evening, the officer asked him to perform a field sobriety test, which Whisnant passed satisfactorily. Gary then issued him a citation for speeding. Throughout the course of these events, as many as four additional officers arrived on the scene to assist Gary. One of these officers, Officer [Antonio] Rhodes, identified Whisnant as someone who had a history of drug possession. Rhodes positioned himself at the rear of the passenger side of the Jeep while Gary conducted the field sobriety test on Whisnant, and from that vantage point, Rhodes observed that the Defendant made "a furtive

gesture reaching down toward the floorboard as if he was trying to retrieve something or conceal something."

Whisnant accompanied Gary to his police car where the officer explained the citation to him.  He then asked Whisnant for consent to search the Jeep, whereupon the latter replied that because the vehicle did not belong to him, he was not sure he could agree to the request.  Gary assured him that because he was the driver, he had the right to consent, and as such, Whisnant responded, "Well, I guess you can search. There's nothing to hide."  After both Whisnant and Collins exited the Jeep, the officers searched it.  During the search, Rhodes discovered a loaded .22 caliber handgun under the front passenger seat in the area where he previously had seen Collins gesturing.  The officers then placed both men in custody and asked them to whom the handgun belonged.  Both men replied that they "didn't know anything about it," to which Gary responded that he would have to take them both into custody and charge them with possession of the firearm.  At that point, Collins said, "I'll take the charge," and he was retained in custody while Whisnant was allowed to leave. (Id.)  The entire detention, from Gary's initiation of the traffic stop to his transportation of Collins to the police station, lasted approximately forty-nine minutes.

Around 6 P.M. on November 30, 2008, Investigator Phillip Kemper of the Jackson Police Department interviewed the Defendant in the Madison County Jail.  After Kemper read Collins his *Miranda* rights, the Defendant signed a waiver thereof.  Kemper then wrote down the statement given by Collins, in which he admitted that the gun was his, and that he had bought it for protection. Collins then signed the statement, which Kemper also signed as a witness.

(R. 48, Opinion at 1-3) (record citations and footnote omitted).

Collins was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  He  moved to suppress the gun, the statement he made to Officer Gary at the scene of the traffic stop that he would "take the charge," and the written statement he signed after his interview with Investigator Kemper at the jail.  After conducting an evidentiary hearing, the district court denied the motion to suppress. Collins pleaded guilty to the § 922(g) charge but reserved his right to appeal the district court's denial of the motion to suppress.

Prior to sentencing, the government filed a notice stating that it would not move for the additional one-level decrease in offense level applicable to defendants who

demonstrate "acceptance of responsibility" as provided for in § 3E1.1(b) of the United States Sentencing Guidelines Manual. At the sentencing hearing, the district court found that the government's failure to make the § 3E1.1(b) motion was not arbitrary or unconstitutionally motivated. Thus, in calculating the applicable advisory Guidelines range, the district court applied only the two-level decrease for acceptance of responsibility provided for in § 3E1.1(a).

The district court also found that Collins qualified as an armed career criminal under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), and U.S.S.G. § 4B1.4(a), meaning that Collins was subject to a minimum sentence of fifteen years. The court determined that Collins' advisory Guidelines range was 151 to 188 months and sentenced him to 184 months' imprisonment. Collins appeals the denial of his motion to suppress and his sentence.

## II. Discussion

### A.      The motion to suppress

In its opinion on the motion to suppress, the district court noted that, while Collins had contested the reasonableness of the detention in his motion to suppress, his counsel conceded that the detention was reasonable at the suppression hearing. Collins agrees that he conceded before the district court that the detention was reasonable. Nevertheless, on appeal, he argues that the detention was unreasonable and that, therefore, the Court should find that Whisnant's consent to search the Jeep was not valid.

By conceding before the district court that the detention was reasonable, Collins has waived any objection to the legality of the detention. "[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quotation marks and citation omitted). When a defendant raises an argument by motion but then abandons the argument before the district court, the defendant has waived the argument and this Court cannot review that issue even for plain error. *United States v. Denkins*, 367 F.3d 537, 544 (6th Cir. 2004) ("[W]e have held that this sort of abandonment of an issue raised by way of motion waives any right

of appeal on that issue."); *United States* v. *Sheppard*, 149 F.3d 458, 461 (6th Cir. 1998) ("Sheppard did not forfeit his suppression argument; he waived the argument by withdrawing his motion to suppress prior to trial. Accordingly, we are without jurisdiction to consider the argument.") (footnote omitted).

Collins argues that the district court erred in finding that Whisnant's consent to search the Jeep was voluntary. Because Whisnant himself testified that he consented to the search and never testified that his consent was coerced or otherwise illegally obtained, the district court did not clearly err in finding that Whisnant's consent to search the Jeep was voluntary.

Whether consent to search is voluntary is a question of fact. *United States v. Crowder*, 62 F.3d 782, 787 (6th Cir.1995). Thus, a district court's finding of voluntary consent will not be reversed unless it is clearly erroneous. *United States v. Calhoun*, 49 F.3d 231, 234 (6th Cir. 1995). This means the district court's finding of voluntary consent will not be reversed unless this Court has a "definite and firm conviction that a mistake has been committed." *United States v. Worley*, 193 F.3d 380, 384 (6th Cir.1999) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

The government had the burden before the district court of proving by "clear and positive testimony" that Whisnant's consent was voluntary. *United States v. Beauchamp*, 659 F.3d 560, 571 (6th Cir. 2011) (quoting *United States v. Salvo*, 133 F.3d 943, 953 (6th Cir. 1998)). Voluntariness is determined by examining the totality of the circumstances, including the individual's age, intelligence, and education; whether the individual understands his right to refuse consent and his constitutional rights; the length and nature of the detention and whether the police used any coercive or punishing conduct, including "subtle forms of coercion that might flaw an individual's judgment." *Id.* (quoting *United States v. Watson*, 423 U.S. 411, 424 (1976) (internal brackets omitted)).

At the suppression hearing, the district court noted that, while testifying, Whisnant spoke well and understood the questions asked of him. In its written opinion on the motion to suppress, the district court found no evidence that Officer Gary

"pressured or attempted to coerce Whisnant into consenting; he merely advised the driver that he had the ability to do so." Further, the district court noted, "Whisnant repeatedly said that he consented to the search, and never once indicated that the officer forced him to acquiesce or that he would have refused consent but for the officer's coercive tactics."

Collins does not dispute these findings. He argues instead that a combination of factors resulted in "subtle coercion" that caused Whisnant to consent to the search of the car. Collins notes that Whisnant testified that he did not understand he could refuse to consent to the search. Collins also points out that Officer Gary told Whisnant that he was aware of Whisnant's prior drug charge and that Officer Gary did not tell Whisnant that Collins had the right to object to the search of the car. Collins also argues there was an "overpowering police presence" at the scene.

While the fact that Whisnant did not understand he could refuse consent to search is a factor to consider in determining whether consent was voluntary, police do not have to inform an individual of his right to refuse to consent to a search. *Beauchamp*, 659 F.3d at 472. Likewise, when requesting an individual's consent to search a vehicle, police are not required to inform the individual that others could object to the search. Nor are police required to obtain the consent of all the occupants of a vehicle in order to search it. *United States v. Booker*, 981 F.2d 289, 294 (7th Cir. 1992). In this case, the alleged consenter himself testified repeatedly that he consented to the search and never testified that he felt coerced into doing so by the factors cited by Collins or any by other factors. Accordingly, the district court did not clearly err in finding that Whisnant's consent was valid.

Collins argues that the district court erred in failing to suppress his statement that he would "take the charge" for the gun found in the Jeep which was made before Collins was advised of his rights as required under *Miranda v. Arizona*, 384 U.S. 436 (1966). Because the statement was not made in response to an interrogation, however, the district court correctly denied the motion to suppress it.

"Statements made by a defendant in response to interrogation while in police custody are not admissible unless the defendant has first been apprized of the constitutional right against self-incrimination and has validly waived this right." *United States v. Cole*, 315 F.3d 633, 636 (6th Cir. 2003) (citing *Miranda*, 384 U.S. at 478-79). "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). "On the other hand, '[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected' by the holding in *Miranda*." *Cole*, 315 F.3d at 636 (quoting *Miranda*, 384 U.S. at 478).

The parties do not dispute that Collins was in custody at the time he stated "I'll take the charge" with regard to the gun discovered in the Jeep. Prior to making that statement, he was not apprised of his rights as required by *Miranda*. The issue is whether Officer Gary elicited Collins' statement with words or actions that he should have known were reasonably likely to elicit an incriminating response. Officer Gary described the exchange as follows:

> Gary:  Both of them initially stated they didn't know anything about [the gun], at which time I advised them that that was fine, that they would both be taken into custody and charged.
> Q:  What happened then?
> Gary:  At that time Mr. Collins said, I'll take the charge.

Collins argues that Officer Gary's statement that he would take both men into custody and charge them with possession of the gun was a "threat," intended to elicit an incriminating response. At the time Officer Gary made the statement, however, he had probable cause to believe that either Whisnant or Collins – or both – possessed the gun. It was discovered in the car that Whisnant was driving on the passenger side where Collins was seated.

Thus, the district court correctly determined that Officer Gary's statement that he would charge both men with possession of the gun was not a threat but a "factually

accurate statement about the next step [Officer Gary] would take as part of the arrest process." An accurate statement made by an officer to an individual in custody concerning the nature of the charges to be brought against the individual cannot reasonably be expected to elicit an incriminating response. "[T]he *Innis* definition of interrogation is not so broad as to capture within *Miranda*'s reach all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges." *United States v. Payne*, 954 F.2d 199, 202 (4th Cir. 1992). The district court correctly found that Collins' statement that he would "take the charge" for the gun was not made as the result of a custodial interrogation.

Collins also argues that, if his pre-*Miranda* statement that he would "take the charge" should be suppressed, then his post-*Miranda* statement to Officer Kemper explicitly stating that he owned the gun should also be suppressed because it was tainted by the earlier failure of the police to provide *Miranda* warnings. This argument fails in light of the Court's ruling on Collins' pre-*Miranda* statement.

### B.    The Sentencing

The district court concluded that Collins qualified as an armed career criminal under § 4B1.4(a) of the United States Sentencing Guidelines Manual and the ACCA, thus subjecting him to a minimum mandatory sentence of 180 months. In his brief on appeal, Collins argued that his prior convictions set forth in the presentence report were not committed "on occasions different from one another" as the statute requires. 18 U.S.C. § 924(e)(1). He conceded that, under *United States v. Hill*, 440 F.3d 292 (6th Cir. 2006), the convictions would count separately. He argued, however, that the Supreme Court implicitly overruled *Hill* in *Begay v. United States*, 553 U.S. 137 (2008). This argument is foreclosed by *United States v. Paige*, 634 F.3d 871, 873 (6th Cir.) (holding that *Begay* did not implicitly overrule *Hill*), *cert. denied*, 132 S.Ct. 206 (2011).

Finally, Collins argues that the district court erred in finding that the government's refusal to move for a one-level reduction in offense level under § 3E1.1(b)

of the United States Sentencing Guidelines Manual was not arbitrary.[1]  The government argues it did not make the § 3E1.1(b) motion because, before Collins pleaded guilty, he required the government to litigate his motion to suppress.  This reason bears a rational relation to the legitimate government interest in the efficient allocation of government resources.  Accordingly,  the district court did not err in finding the decision was not arbitrary.

The current version of § 3E1.1 is the same as the version that the district court used for Collins' sentencing.  Subsection (a) of the provision provides for a two-level reduction in the offense level of a crime if the defendant "clearly demonstrates acceptance of responsibility."  U.S. Sentencing Guidelines Manual § 3E1.1(a) (2011).  Collins received this reduction at sentencing.  Subsection (b) of § 3E1.1 provides for an additional one-level decrease in the offense level if the defendant qualifies for a decrease under subsection (a) and the defendant's offense level is level 16 or greater.  U.S. Sentencing Guidelines Manual § 3E1.1(b) (2011).  Unlike the two-level reduction provided for in subsection (a), however, the one-level reduction in subsection (b) is permitted only if the government moves for it in a motion stating that "the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government *to avoid preparing for trial* and permitting *the government and the court to allocate their resources efficiently . . . .*" U.S. Sentencing Guidelines Manual § 3E1.1(b) (2011)(emphasis added).

The requirement that the government move for the additional one-level reduction was put in place by the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003  ("PROTECT Act").  Pub. L. No. 108-21, § 401(g), 117 Stat. 650, 671-72 (2003).  Prior to the PROTECT Act, the district judge decided whether to grant the additional one-level decrease.  The discretion granted the

---

[1]Had the district court awarded Collins the additional one-level reduction in offense level, his applicable advisory Guidelines range would have been 135 to 168 months. Without the additional one-level decrease, Collins' applicable Guidelines range was 151 to 188 months. No matter the applicable Guidelines range, however, Collins' minimum sentence was 180 months because he qualified as an armed career criminal.  The district court ultimately sentenced Collins to 184 months.

government under the provision is subject only to the limitation that the government's refusal to file a § 3E1.1(b) motion cannot be based on a "constitutionally impermissible factor" and cannot be arbitrary. *United States v. Coleman*, 627 F.3d 205, 215 (6th Cir. 2010), *cert. denied*, 131 S.Ct. 2473 (2011). This means that the prosecutor's decision must bear a rational relation to a legitimate government end and must not be based on factors such as religion, sex, or race. *United States v. Lapsins,* 570 F.3d 758, 769 (6th Cir. 2009) (citing *Wade v. United States*, 504 U.S. 181, 186-87 (1992)). The defendant must present "objective evidence of an improper motive or arbitrary action" to overcome the government's decision not to file a § 3E1.1(b) motion. *Id.* (citing *United States v. Espinoza-Cano*, 456 F.3d 1126, 1138 (9th Cir. 2006)).

The government did not move for the additional one-level reduction provided for in § 3E1.1(b). In arguing that the government's refusal to do so was arbitrary or based on a constitutionally impermissible factor, Collins first argues that the United States Attorney's Office for the Western District of Tennessee has a policy of withholding a § 3E1.1(b) motion when a defendant files a motion to suppress evidence. The Court need not address this issue because, whether such a policy existed during the relevant time period or not, the government also argues that, in this particular case, it did not file the § 3E1.1(b) motion because preparation for the suppression hearing was tantamount to preparing for trial.

The government does not dispute that Collins demonstrated "acceptance of responsibility" as § 3E1.1(b) requires. Instead, the government argues that it did not file the § 3E1.1(b) motion because the defendant's guilty plea, which came after his motion to suppress, did not permit the government to allocate its resources efficiently as the provision also requires. In this way, this case is distinguishable from *Lapsins* and *Coleman*. In those cases, the government justified its failure to file a § 3E1.1(b) motion because, although the defendant in each case had at least conditionally pleaded guilty, the government argued the defendant had not truly demonstrated an acceptance of responsibility. *Lapsins*, 570 F.3d at 770; *Coleman*, 627 F.3d at 215; *see also United States v. Howell*, 421 F. App'x 565, 567 (6th Cir. 2011).

This Court has not directly addressed the issue of whether the government can withhold a § 3E1.1(b) motion where it is undisputed that the defendant has demonstrated "acceptance of responsibility for his offense" as the provision requires and there is no evidence that the government was required to prepare for trial.  The Second and Fourth Circuits have held that the only legitimate government interest recognized in § 3E1.1(b) is the government's interest in avoiding a trial and that, if the government's reason for withholding the motion is not related to that interest, it is invalid.  *See United States v. Divens*, 650 F.3d 343 (4th Cir. 2011); *United States v. Lee*, 653 F.3d 170 (2d Cir. 2011).

In *Divens*, the government refused to make a § 3E1.1(b) motion because, although the defendant pleaded guilty, he would not waive certain rights to appeal and to collaterally attack the judgment.  The government argued that its reason for withholding the motion was "'rationally related to the purposes of the guidelines' because it allowed the Government to avoid defense of 'a complete appeal' and 'allocate its resources to other matters.'" *Divens*, 650 F.3d at 344.  The Fourth Circuit disagreed, stating that § 3E1.1(b) "simply does not require that a defendant provide the prosecution with the type of assistance that might reduce the 'expense and uncertainty' attendant to an appeal." *Id*. at 348.  Instead, "§ 3E1.1(b) provides that a defendant earns an additional one-level reduction by providing the government one specific form of assistance, i.e., by 'timely notifying authorities of his intention to enter a plea of guilty.'" *Id*.  "It does not permit the Government to withhold a motion for a one-level reduction because the defendant has declined to perform some other act to assist the Government." *Id*.

In *Lee*, the government withheld the § 3E1.1(b) motion because the defendant made objections to his presentence report which required a *Fatico* hearing.  The Second Circuit viewed the plain language of the provision as referring "only to the prosecution resources saved when the defendant's timely guilty plea 'permit[s] the government to avoid preparing *for trial*.'" *Id*. at 174 (quoting U.S.S.G. § 3E1.1(b)).  The court further noted that the Application Notes to the provision did not refer to resources saved by

avoiding preparation for any proceeding other than a trial. *Id*. Thus, the court held, the government's refusal to make the motion because it had to prepare for a *Fatico* hearing was unlawful. *Id*. at 173.

The problem with this interpretation is that it fails to take into account the amended language of § 3E1.1(b). It is true that the former and current versions of the provision explicitly identify a government interest in avoiding preparing for trial.[2] The amended version, however, also explicitly identifies a broader government interest in allocating its resources efficiently. The *Divens* court recognized this in a footnote but determined that, given that the remainder of the language and the commentary's exclusive focus on trial preparation, the term "resources" in § 3E1.1(b) "most naturally refers to the Government's *trial* resources." 650 F.3d at 349 n.3 (emphasis added).

This interpretation leaves the language added by the PROTECT Act essentially meaningless, violating the fundamental rule of statutory construction that "we must give effect to every word of a statute wherever possible." *Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004). The provision does not limit the reference to the government's resources to *trial* resources and this Court will not add language to the provision that would so limit it. *Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238, 246-47 (6th Cir. 2004) ("[C]ourts have a duty to refrain from reading a phrase into a statute when Congress has left it out.").

---

[2]The pre-PROTECT Act version of §3E1.1 provided as follows:

(a)    If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b)    If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:

(1)    timely providing complete information to the government concerning his own involvement in the offense; or
(2)    timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,

decrease the offense level by 1 additional level.

U.S. Sentencing Guidelines Manual § 3E1.1(b) (2002).

As noted by the Ninth Circuit in *United States v. Johnson*, "the PROTECT Act expressly inserted consideration of the government's resources into the calculus." 581 F.3d 994, 1006 (9th Cir. 2009). Under the amended language, "the government must file a motion stating that the defendant's timely notification of an intent to plead guilty not only 'permitt[ed] the government to avoid preparing for trial,' but also 'permitt[ed] *the government* and the court to allocate their resources efficiently.'" *Id.*

In *Johnson*, the court held that the government could properly withhold a § 3E1.1(b) motion where the defendant entered a conditional guilty plea reserving his right to appeal the court's denial of his suppression motion. The withholding of the motion was proper because "[a]voiding the expenditure of additional resources in anticipation of and defending against an appeal is a legitimate government interest." *Id.* at 1003. The First, Third, Fifth, and Tenth Circuits have also found that interests other than avoiding preparing for trial can justify the government's refusal to make a § 3E1.1(b) motion. *See United States v. Newson*, 515 F.3d 374, 378 (5th Cir. 2008) (holding that the government's refusal to make § 3E1.1(b) motion solely because the defendant would not accept an appellate waiver provision in a plea agreement is rationally related to purpose of the rule and not based on an unconstitutional motive); *United States v. Beatty*, 538 F.3d 8, 15-16 (1st Cir. 2008) (rejecting the defendant's argument that the only legitimate end that the government may consider under § 3E1.1(b) is the avoidance of *trial* preparation and upholding the government's refusal to make § 3E1.1(b) motion when the defendant contested drug weights and whether the drug was crack cocaine); *United States v. Delaurier*, 237 F. App'x 996, 998 (5th Cir. 2007) (holding that the district court did not err in denying the defendant the third point for acceptance of responsibility where "the government was forced to spend considerable time and effort defending the motion to suppress, and the defendant has not demonstrated an improper motive behind that decision"); *United States v. Blanco*, 466 F.3d 916, 918 (10th Cir. 2006) (holding that "[e]nsuring efficient resource allocation is a legitimate government end and a stated purpose of § 3E1.1(b)" and that the prosecutor's decision to withhold a § 3E1.1(b) motion when the defendant pleaded guilty but requested reweighing of drugs is "rationally related to that end"); *United States v.*

*Sanders*, 208 F. App'x 160, 163 (3d Cir. 2006) (holding that the government's withholding of a § 3E1.1(b) motion was justified where the government reasonably concluded that the defendant did not permit the government or the court to "allocate their resources efficiently").

Because the amended language of § 3E1.1(b) explicitly recognizes both a government interest in avoiding trial preparation and in the efficient allocation of government resources, this Court agrees that both are legitimate government interests that justify the withholding of a § 3E1.1(b) motion. This Court may review the government's decision to withhold a § 3E1.1(b) motion only to determine whether the government acted arbitrarily or with an unconstitutional motive. *Coleman*, 627 F.3d at 214. Here, the government argues that it did not make the motion because, although the defendant pleaded guilty, the motion to suppress required it to undertake trial-like preparations. Avoiding litigation on a motion to suppress is rationally related to the legitimate government interest in the efficient allocation of its resources. Accordingly, the district court correctly found that the government's decision to withhold the § 3E1.1(b) motion was not arbitrary or unconstitutionally motivated.

In *Lee*, the Second Circuit stated that the government should not be permitted to punish a defendant for exercising his constitutional rights by withholding a § 3E1.1(b) motion when the defendant does so. 653 F.3d at 174. But that court did not question the government's ability to withhold a § 3E1.1(b) motion when a defendant insists on going to trial. *Id*. at 174-75. The government can do so without diminishing the constitutional right to trial because a defendant can exercise his right to trial or any other constitutional right either by affirmatively asserting the right or by waiving the right in exchange for a lower sentence. *Beatty*, 538 F.3d at 16; *see also Blanco*, 466 F.3d at 919; *Johnson*, 581 F.3d at 1006-07. Likewise, a defendant can exercise his Fourth Amendment rights by either moving to suppress evidence as Collins did or by waiving those rights in exchange for a lower sentence under § 3E1.1(b).

### III.  Conclusion

The district court's judgment is AFFIRMED.