NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 12a0790n.06

No. 11-5448

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jul 20, 2012*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA, )
)
    Plaintiff-Appellee, )
) ON APPEAL FROM THE UNITED
v. ) STATES DISTRICT COURT FOR THE
) EASTERN DISTRICT OF TENNESSEE
HAROLD JACKSON, )
) OPINION
    Defendant-Appellant. )

**Before: ROGERS and STRANCH, Circuit Judges; PEARSON, District Judge.**[*]

**JANE B. STRANCH, Circuit Judge**. Defendant-Appellant Harold Jackson, a convicted

felon, was found in possession of a Lorcin .380 caliber pistol. The district court denied Jackson's

Motion to Suppress that weapon and Jackson pled guilty to being a convicted felon in possession of

a firearm, in violation of 18 U.S.C. § 922(g)(1). On appeal, Jackson argues that the district court

should have granted his suppression motion challenging the police encounter that led to the

weapon's discovery. For the following reasons, we affirm.

## I. BACKGROUND

The magistrate judge's account of the evidence and testimony, adopted by the district court,

aptly summarizes the facts at issue in this case:

---

[*]The Honorable Benita Y. Pearson, United States District Judge for the Northern District of
Ohio, sitting by designation.

At the evidentiary hearing on the [suppression] motion, the Government offered the testimony of Chattanooga Police Department ("CPD") Officer Marvin Crider ("Crider"), who testified as follows:

Crider has been an officer at the CPD for almost 15 years and has been assigned to the Special Investigations Unit, which conducts fugitive investigations, for several years. On December 30, 2009, around 11 o'clock on a cold morning, Crider and his partner were in plain clothes in an unmarked, tan Ford Explorer on a routine fugitive patrol. They were traveling northbound on Willow Street looking for persons wanted on outstanding warrants when he saw Defendant walking southbound, diagonally across the intersection of Willow Street and East Third Street. Defendant paused when he saw the unmarked car, deliberately turned his back to the car and pulled the hood of his "hoodie" up and down low over his face. Based on his law enforcement experience, Crider believed the Explorer, while unmarked, was well known as a police vehicle in the area. Crider also believed Defendant was trying to obscure his identity by pulling up his hood low over his face and down to his nose.

Crider then saw Defendant cross Third Street against the light and nearly walk in front of a westbound car. Crider believed Defendant's hood was pulled so low over Defendant's face that he was unable to see the approaching vehicle.

Crider circled the block and approached Willow Street from Fourth Street in order to observe Defendant at closer range since he believed Defendant was trying to hide his identity upon recognizing his vehicle as an unmarked patrol car. As Defendant walked, Crider noticed Defendant's left front pocket of his baggy pants swing with each step as if he had a heavy object in his pocket and Crider saw what appeared to be possibly the outline of the slide top of a gun in the bottom of the pocket. Based on his law enforcement experience, Crider thought Defendant might be carrying a gun in his pocket.

Crider decided to engage Defendant in a consensual encounter, and he pulled alongside Defendant, identified himself as "police," and asked Defendant his name. Defendant replied, "Jason." Crider is certain Defendant could see both his partner's badge, which his partner wore on the top of his thigh holster, and Crider's own badge, which he wore on his belt, as Defendant looked from under his hood into the Explorer. As Crider began to ask "Jason who?" Defendant ran.

Crider yelled for him to stop, but Defendant continued to run. Crider attempted to stop Defendant by blocking him with the Explorer, and when that was unsuccessful he gave chase on foot. While Defendant was running, he kept grabbing

2

his pants pocket on the outside, which made Crider believe Defendant had a gun in his pocket. Eventually Crider overtook Defendant and they engaged in a lengthy struggle. When Crider's partner reached them, he helped subdue Defendant. During the struggle, his partner's handcuffs were dropped and a citizen retrieved and handed the handcuffs to the officers. Crider could not remember the citizen's name, but he thought it might have been Defendant's sister.

He conducted a patdown of Defendant and, upon feeling the gun in his left front pants pocket, Crider recovered a Lorcin .380 caliber pistol from the pocket. Crider did not see Defendant's face well enough under the hood to recognize him until after he was subdued. Upon seeing Defendant's face, Crider knew he had been involved in several previous encounters with Defendant. Defendant was taken into custody, advised of his rights, and he then made incriminating statements.

On cross, Crider agreed there was nothing unusual about wearing a hood on a cold December morning. He also acknowledged he was not certain that the object in Defendant's pocket was a gun, but he was suspicious it was. He was certain Defendant saw the officers' badges when he looked into the vehicle and he believed Defendant recognized him from their past encounters.

Defendant offered the testimony of Shawana Walker, who testified as follows:

She was in her vehicle exiting the Family Dollar Store located on Willow Street between Fourth Street and Third Street when she saw Defendant with his hood covering only his head and not part of his face as he walked down Willow Street toward Fourth Street. She saw nothing suspicious about Defendant, she could see his face, and she saw no bulge in his pants pocket. Defendant was across the street directly in front of her when she saw and immediately recognized him. Defendant frequently wore the hoodie and she had seen him in it within the two weeks prior to the incident at issue. She is a family friend and has known Defendant and his family for at least 25 years. Upon seeing Defendant she intended to speak to him as she had been asked by his sister to be on the lookout for him and she wanted to tell Defendant to call his sister.

Before she could speak to Defendant, she saw a sage and beige sports utility vehicle ("SUV") turn left from Third Street onto Willow Street and pull alongside Defendant. There were two "white guys" in the SUV. She did not know and could not tell they were police officers, she could not describe the men in the SUV, and she did not know and could not tell the SUV was affiliated with the police. She

described the color of the SUV as sage or light mint with beige at the bottom. She did not recognize Crider in the courtroom.

Walker was between 15 and 20 feet away from Defendant when the SUV first approached him. She could not hear any conversation but she believes both the passenger and driver's windows were down. She saw the SUV drive on the sidewalk and strike Defendant, who then ran away. After she saw Defendant being chased by the two white men after being struck by the SUV, she followed in her vehicle because she was concerned for Defendant's safety. She saw the men struggle with Defendant and handed one of the men the dropped handcuffs. She knew the men struggling with Defendant were police officers when she noticed one had a bulletproof vest on and she noticed the dropped handcuffs. She never saw a gun pulled from Defendant's pocket, but she did see a handheld game pulled from Defendant's pocket by the officers.

*United States v. Jackson*, No. 1:10-cr-51, 2010 WL 4392862, at *1-2 (E.D. Tenn. June 21, 2010).

Jackson was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He challenged the legality of the officers' detention, arguing it constituted an unlawful search and seizure and moved the district court to suppress the evidence that was a product of that encounter. The motion was referred to a magistrate judge, who held an evidentiary hearing. The resulting Report and Recommendation found that the gun was obtained by the police officers during a valid stop under *Terry v. Ohio*, 392 U.S. 1 (1968), and recommended that the district court deny the motion to suppress. Jackson's subsequent objections were overruled by the district court which adopted the Report and Recommendation in its entirety.

After the court's decision denying Jackson's suppression motion, Jackson entered a guilty plea conditioned on his ability to appeal the suppression issue. The court sentenced Jackson to 94 months' incarceration followed by 3 years of supervised release. Jackson now appeals, contending that the district court should have granted his motion to suppress.

## II. DISCUSSION

**A.    Standard of Review**

In an appeal of the denial of a motion to suppress, this court reviews the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Hudson*, 405 F.3d 425, 431 (6th Cir. 2005). If the district court denied the motion to suppress, then we must "view the evidence in the light most favorable to the government." *United States v. Smith*, 549 F.3d 355, 359 (6th Cir. 2008). A factual finding is clearly erroneous when, although there is evidence to support the finding, we are left with the definite and firm conviction that a mistake has been committed. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). If there are two permissible views of the evidence, the district court's determination between them cannot be clearly erroneous. *Id.*

**B.    The *Terry* Stop**

The Fourth Amendment prohibits unreasonable searches and seizures. In *Terry v. Ohio*, 392 U.S. 1, 27 (1968), the Supreme Court held that in the interest of safety, a police officer may stop a person in the absence of probable cause under certain circumstances. Specifically, a police officer may conduct a brief investigatory stop, a *Terry* stop, of a person if the officer has a reasonable suspicion, supported by specific articulable facts, that criminal activity has occurred or is about to occur. *United States v. Atchley*, 474 F.3d 840, 847 (6th Cir. 2007). When evaluating an investigatory *Terry* stop, this court engages "in a two-part analysis of the reasonableness of the stop." *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006) (quoting *United States v. Davis*, 430

F.3d 345, 354 (6th Cir. 2005)). "'We first ask whether there was a proper basis for the stop' and, if the stop was proper, 'then we must determine whether the degree of intrusion . . . was reasonably related in scope to the situation at hand.'" *United States v. Smith*, 594 F.3d 530, 536 (6th Cir. 2010) (quoting *Caruthers*, 458 F.3d at 464).

In the first part of the *Terry*-stop analysis, we determine whether there was reasonable suspicion to justify the investigatory stop. This determination is made in light of the totality of the circumstances, *United States v. Arvizu*, 534 U.S. 266, 273 (2002), and requires "the detaining officers [to] have a particularized and objective basis for suspecting the particular person stopped of criminal activity," *United States v. Cortez*, 449 U.S. 411, 417–18 (1981). "An inchoate and unparticularized suspicion or hunch will not do." *Caruthers*, 458 F.3d at 464-65 (internal quotation marks omitted) (quoting *Terry*, 392 U.S. at 27).

Jackson does not contest the scope of the officers' intrusion, which included the pat-down that revealed the gun in Jackson's pocket. Rather, Jackson challenges only the first part of the analysis: the basis for initiating the investigatory stop. At the hearing, Officer Crider testified that his basis for detaining Jackson included the following considerations: Crider was driving a vehicle that he testified was well known as a police vehicle; when Jackson saw Crider's vehicle, Jackson stopped walking suddenly, turned his back to the street, and threw his hood up over his head until his face was covered all the way down to his nose; Crider observed a heavy-weighted object in Jackson's left front pants pocket that Crider believed resembled a firearm; and Jackson took off running after Crider identified himself and his partner as police officers and asked for Jackson's

name. Crider testified that these factors led him to suspect that criminal activity was afoot—that Jackson was likely wanted on an outstanding warrant and was armed.

On appeal, Jackson appears to argue both that Crider's testimony is not credible and that the facts he testified to do not give rise to reasonable suspicion, even if true. However, a review of the suppression hearing record reveals that Jackson expressly limited his argument to whether Crider's testimony was credible, admitting that, if credible, those facts amount to reasonable suspicion sufficient to support a *Terry* stop. The exchange between Jackson's counsel, Anthony Martinez, and Magistrate Judge Lee was as follows:

> THE COURT: And I would like to know whether you're arguing that those three things, if found to be credible, don't support the basis for a *Terry* stop, or if your argument is those three things didn't happen the way Officer Crider testified they did, so that I can understand what your argument is a little bit better, given that the facts presented in your motion are not the facts before me as a result of the evidentiary hearing, exactly. . . .

> MR. MARTINEZ: That's true.

> THE COURT: So the facts as presented, are you arguing that those facts, if found to be credible, don't support a *Terry* stop?

> MR. MARTINEZ: No. If they're found credible, Your Honor, then it supports a *Terry* stop.

> THE COURT: So you don't argue, then, that the three things, the attempt to hide identity, the flight, and the observation of something in the pocket, wouldn't support a *Terry* stop?

> MR. MARTINEZ: That's correct.

> THE COURT: You've already told me you're not contesting the frisk. So it really comes down to whether Officer Crider's testimony is credible, given all the testimony presented here today.

MR. MARTINEZ: Right. . . .

(R. 32, Supression Hearing Tr., at 59-60). Because Jackson waived below any challenge other than one based on credibility, our review of the denial of his suppression motion is limited to that issue. *United States v. Collins*, — F.3d —, No. 10-6454, 2012 WL 2094415, at *2 (6th Cir. June 12, 2012) ("When a defendant raises an argument by motion but then abandons the argument before the district court, the defendant has waived the argument and this Court cannot review that issue even for plain error." (citations omitted)).

We afford great deference to the district court's credibility determinations regarding witness testimony. *United States v. Hinojosa*, 606 F.3d 875, 882 (6th Cir. 2010). "With regard to *Terry*-stop analysis in particular, although the standard of review on the ultimate reasonable suspicion inquiry is *de novo*, the district court is at an institutional advantage, having observed the testimony of the witnesses and understanding local conditions, in making this determination. Accordingly, due weight should be given to the inferences drawn from the facts by resident judges." *Caruthers*, 458 F.3d at 464 (internal quotation marks, citations, and alteration omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574; *see also United States v. Dillard*, 438 F.3d 675, 681 (6th Cir. 2006) (holding district court's reconciliation of seemingly contradictory testimony was not clearly erroneous).

Examination of the hearing testimony reveals that few factual conflicts existed; however, the magistrate judge credited Officer Crider's testimony to the extent it conflicted with Shawana Walker's. Regarding recognition of Jackson, Walker's ability to recognize Jackson's face despite

his raised hood is readily explained by the facts that Walker had known Jackson for twenty or twenty-five years and had seen him in that hoodie within two weeks of the incident. Walker's testimony on this issue does not defeat Crider's belief that Jackson attempted to hide his identity. Walker was not present when Jackson first raised his hood and, to the extent that there is a conflict over how much of Jackson's face was obscured, Crider's testimony was deemed more credible. Further, although Walker testified she did not hear the officers identify themselves, Walker was in her vehicle fifteen to twenty feet away from the conversation between Jackson and the officers and she admitted that she would not have been able to hear the officers if they had identified themselves.

Walker also testified that she did not observe the outline of a possible gun in Jackson's pocket, as described by Crider. The magistrate judge found Crider's testimony on this issue more credible, however, because Walker also failed to see a gun pulled from Jackson's pants at the scene of his arrest, even though it was undisputed that Jackson had a gun in his pocket when he was apprehended. Finally, the other conflicts between Walker's and Crider's testimony—relating to the color of Crider's vehicle and the exact location of the initial encounter—are irrelevant to the reasonable suspicion analysis in this case.

Jackson has not carried his substantial burden to persuade us that the lower court's credibility and factual findings were clearly erroneous in light of the evidence presented at the suppression hearing. *See Anderson*, 470 U.S. at 575. After having heard the witnesses testify and having judged their demeanor, the magistrate judge sufficiently explained why she believed Officer Crider, and not Walker, and the district court agreed. The court's factual findings and legal conclusions logically

followed from its credibility determinations.  For these reasons, Jackson has not shown that reversal

is warranted.

## III.  CONCLUSION

For the foregoing reasons, the district court's denial of Jackson's Motion to Suppress is

**AFFIRMED**.