UNITED STATES of America, Plaintiff–Appellee,

v.

Thomas E. RAY, Defendant–Appellant.

No. 14–6403.

United States Court of Appeals, Sixth Circuit.

Feb. 4, 2016.

BEFORE: BATCHELDER, MOORE, and ROGERS, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge.

Thomas Ray tried to blackmail the University of Louisville by sending emails under the false name "Melinda White" to two senior officials in the school's athletics department. "Ms. White" claimed to have in her possession video evidence showing one of the starting players on the University's men's basketball team agreeing to participate in an illegal point-spread scheme.

The email offered to keep the matter hushed up in exchange for $3.5 million.

The FBI traced the emails to a home in Jackson, Mississippi, where Ray lived. Law enforcement obtained and executed a search warrant. In order to "secur[e] the scene," the officers conducting the search handcuffed Ray and put him in the back of a patrol car, but told him that they were not arresting him. They searched Ray's bedroom and found a pair of laptops that had accessed the Melinda White email account as well as an index card with the Melinda White email address and password. The emails themselves, however, were not found on either computer.

At some point during the search, the officers advised Ray of his *Miranda* rights, and he immediately asked for an attorney. The officers did not question him, and they eventually removed the handcuffs. They then "allowed [him] to sit on the front porch of his home while Agents completed the search." One of the officers, accompanied by an FBI agent, approached Ray and introduced himself as a Louisville police officer; he told Ray that the officers were there to investigate the Melinda White emails and that the search had revealed the incriminating index card in Ray's room. The officer explained that Ray would not be going to jail that day but that it was "very possible that [he] might in the future." "RAY still did not wish to speak with Agents but he began to sweat profusely and rub his legs rapidly. As [the agents] walked away from RAY, RAY stated 'I didn't hurt anybody.'"

A federal grand jury indicted Ray for violating 18 U.S.C § 875(d), which criminalizes knowingly transmitting in interstate commerce an email with the intent to extort. Before the trial, Ray moved to suppress both his nervous physical reaction and his utterance "I didn't hurt anybody," contending that these had been ob-

tained in violation of his Sixth Amendment right to counsel. The district court denied the motion, and the evidence was admitted at trial. At the close of proof, Ray's attorney renewed his motion to suppress. The court again denied the motion, explaining that "[i]t got real close ... to being that [the police] intended to elicit a response, but I'm going to overrule that renewed motion and the record will stand."

The jury found Ray guilty, and the district court sentenced him to two years of imprisonment and one year of supervised release. Ray filed this timely appeal. He contends that the police violated both his Fifth and Sixth Amendment rights and that the district court should have suppressed the evidence of his nervous physical reaction and his utterance "I didn't hurt anybody." We affirm.

Ray's Sixth Amendment argument fails because that amendment applies only *after* the initiation of adversarial judicial proceedings. *See McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). There is no merit to Ray's contention that such proceedings began with the issuance of the search warrant and the officers' focus on him during the investigation. *See United States v. Myers,* 123 F.3d 350, 359 (6th Cir.1997) (collecting cases); *see also United States v. Ortkiese,* 208 Fed.Appx. 436, 440 (6th Cir.2006).

The question is closer with regard to the Fifth Amendment. Unfortunately for Ray, the relevant portions of both his motion to suppress and his renewed motion at trial invoked only the Sixth Amendment, and we review for plain error "new suppression arguments raised for the first time on appeal after a defendant's original suppression arguments proved unsuccessful at the trial court level." *United States v. Lopez–Medina,* 461 F.3d 724, 739 (6th Cir.2006). "The plain error doctrine is to be used only in exceptional circumstances

to avoid a miscarriage of justice." *Id.* "An error is plain when it is obvious, affects substantial rights, and seriously affects the fairness or integrity of judicial proceedings." *Id.*

Because he invoked his right to counsel, Ray was entitled to suppression of any (1) statement, *Pennsylvania v. Muniz,* 496 U.S. 582, 589, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), (2) made while in custody, *United States v. Salvo,* 133 F.3d 943, 948 (6th Cir.1998), and (3) in response to interrogation, *Rhode Island v. Innis,* 446 U.S. 291, 300–02, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

*Statement.* The Fifth Amendment privilege against self-incrimination "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." *Muniz,* 496 U.S. at 589, 110 S.Ct. 2638 (quoting *Schmerber v. California,* 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). "[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Doe v. United States,* 487 U.S. 201, 210, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988). Thus, Ray's nervous physical reaction was not a "statement" protected by the Fifth Amendment, *see United States v. Velarde–Gomez,* 269 F.3d 1023, 1030 (9th Cir.2001) (en banc), but the utterance "I didn't hurt anybody" was, *see Doe,* 487 U.S. at 210, 108 S.Ct. 2341.

*Custody.* In determining whether someone was in custody, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). We have highlighted four factors that are relevant to this analysis: "(1) the purpose of the questioning; (2) whether the place of the questioning was hostile

or coercive; (3) the length of the questioning; and (4) other indicia of custody." *Salvo,* 133 F.3d at 950. The "other indicia" of custody include

> whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or voluntarily admitted the officers to the residence and acquiesced to their requests to answer some questions.

*Id.* Some of these factors weigh in the government's favor: the interaction was very brief and occurred on the front porch of Ray's mother's house, which is not an inherently coercive space. The officer, moreover, was not "questioning" Ray in the usual sense, but was explaining who he was, what the search had revealed, and the possible consequences for Ray.

On the other hand, Ray may have felt significant pressure to remain where he was. The officers had only recently released him from handcuffs and had merely "allowed" him to sit on the front porch. And though he was not "questioned," the context does indicate a significant level of pressure in the interaction similar to questioning. As the officer admitted at trial, "if [my statements] were to elicit a response, that would benefit me." This would be a closer question if Ray had preserved it for appeal. But we are reviewing the Fifth Amendment argument for plain error, and the error, if any, was not obvious.

*Interrogation.* The interaction, moreover, was not obviously "interrogation" either. As we have explained, "[a]n accurate statement made by an officer to an individual in custody concerning the nature of the charges to be brought against the

individual cannot reasonably be expected to elicit an incriminating response." *United States v. Collins,* 683 F.3d 697, 703 (6th Cir.2012).

Ray has failed to show plain error. And as mentioned above there is no merit in Ray's Sixth Amendment argument. We therefore affirm.