NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0567n.06

Case No. 20-5835

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Dec 07, 2021 |
| Plaintiff - Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR THE |
| QUINTIN DAVIS, | ) | EASTERN DISTRICT OF KENTUCKY |
|  | ) |  |
| Defendant - Appellant. | ) |  |
|  | ) |  |

Before: GUY, MOORE, and GIBBONS, Circuit Judges.

GIBBONS, J., delivered the opinion of the court in which GUY, J., joined. MOORE, J. (pp. 10–11), delivered a separate dissenting opinion.

JULIA SMITH GIBBONS, Circuit Judge. Quintin Davis was convicted by a jury of conspiracy to distribute fentanyl and heroin and possession of fentanyl and heroin. He was sentenced to 288 months' imprisonment. He argues that the district court should have suppressed his recorded statement to officers and that the district court erred in sentencing him as a career offender. We affirm the district court.

**I**

On August 29, 2018, officers arrested Davis in Cincinnati after pulling his car over and finding a bottle of orange juice poured into the cupholders, white powder, a plastic baggie, and $1,192 in cash. Davis was transported to a police station on Warsaw Avenue. Officer Brett Stratmann showed Davis a picture of Ronnie Teets, the subject of a drug investigation,[1] and asked

---

[1] Ultimately, Teets was also a defendant in this case.

Davis whether he recognized him. Shortly after arriving at the station, around 10:30 a.m., Davis was read his *Miranda* rights and said he was not interested in talking. Stratmann then left Davis alone and went to work on search warrants for about thirty minutes. When Stratmann returned, Davis had his head on the table. Concerned about a possible overdose, Stratmann got Davis up and asked whether he felt all right. Once Stratmann realized Davis was okay, he continued working on search warrants while periodically checking in on Davis.

During his intermittent check-ins, Stratmann talked to Davis about the case. He told Davis that the police were drafting search warrants and that Davis's girlfriend had been stopped by police. Stratmann also asked Davis if the money found in the car was his and whether he had been working. Around 1:00 p.m., Davis asked Stratmann whether they could speak in a more private setting. Davis was taken to the Central Vice Unit. At this second location, Officer Ken Baker read Davis his *Miranda* rights and Davis signed a waiver. Baker conducted a video recorded interview of Davis, with Stratmann in the room.

Davis was indicted on three counts: conspiracy to distribute fentanyl and heroin, in violation of 21 U.S.C. § 846 (Count 1); possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 2); and possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 3). Davis moved to suppress the statements he made to law enforcement officers after he was arrested. Davis argued he invoked the right to silence, but the officers failed to honor this invocation. The government did not seek to introduce any statements Davis made before the recorded interview but argued that the recorded statement at the Central Vice Unit was admissible. On referral, the magistrate judge held an evidentiary hearing and recommended denying the motion. Davis objected to the Report and Recommendation ("R&R"). The district court adopted the R&R in part.

The district court determined that Stratmann's question about money at the Warsaw location was an improper interrogation. Therefore, Stratmann's question about the money and any response given by Davis were excluded. The court then considered the effect of Stratmann's interrogation on Davis's subsequent statements. While Stratmann improperly interrogated Davis about the money after Davis invoked his right to silence, the questions "were not coercive or designed to wear down [Davis's] resolve." DE 104, Dist. Ct. Order, Page ID 445. The court also found that Davis's waiver at the Central Vice Unit was knowing and voluntary. Because Davis's recorded statement was not the product of a *Miranda* violation, the district court denied Davis's motion to suppress.

Davis proceeded to trial, representing himself. The recorded interview was not played at trial, but Stratmann testified to Davis's statements in the recording. The jury convicted Davis on all three counts.

At sentencing, Davis objected to applying the career offender enhancement. The district court determined Davis could be classified as a career offender under Counts 2 and 3 because of his prior convictions for robbery and trafficking in cocaine. The court noted that "[e]ven without the career offender status, [Davis] would be a Category 6" based on his criminal history. DE 234, Tr., Page ID 2249. After calculating a Guidelines range of 262 to 327 months, the court sentenced Davis to 288 months' imprisonment on Counts 1 and 2 and 240 months' imprisonment on Count 3, to run concurrently.

Davis argues the district court erred in denying his motion to suppress the recorded interview and in designating him as a career offender.

**II**

We first discuss Davis's motion to suppress and then turn to his sentencing.

**A**

"When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law *de novo*." *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000). We construe the evidence "in the light most likely to support the district court's decision." *Id.* (quoting *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)). Davis argues the district court erred in declining to suppress his recorded statement because Stratmann failed to scrupulously honor Davis's invocation of the right to remain silent and this failure tainted Davis's subsequent recorded statement. We disagree and affirm the district court.

There is no dispute that Davis initially invoked his right to silence. Therefore, the admissibility of Davis's post-invocation statements depends on "whether his right to cut off questioning was scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 104 (1975) (internal quotation marks omitted). In making this determination, we consider several non-exclusive factors including:

> (1) whether police advised the defendant of his *Miranda* rights at the first interrogation, (2) whether police immediately ceased the interrogation upon defendant's request, (3) whether police resumed questioning after a significant period of time, and (4) whether police provided new *Miranda* warnings at successive interviews.

*Davie v. Mitchell*, 547 F.3d 297, 310 (6th Cir. 2008). No one factor is "predominant or dispositive." *Fleming v. Metrish*, 556 F.3d 520, 529 (6th Cir. 2009) (citation omitted). Rather, the focus is on "whether the confession was obtained in a manner compatible with the requirements of the Constitution." *Id.* (internal quotation marks and citation omitted). Davis argues his right to

silence was not scrupulously honored because Stratmann continued to interrogate him by asking about the money and Teets's photograph and by "updating" him about the case.

One of the *Davie* factors is whether the officer immediately stopped the interrogation upon the suspect's invocation of the right to silence. 547 F.3d at 310. Davis contends Stratmann did not stop the interrogation because Stratmann asked about the money shortly after Davis invoked the right to silence. The district court was unable to determine exactly how much time passed between Davis's invocation of his right to silence and Stratmann's question about the money. However, it is clear from the record that at least thirty minutes had passed. So the district court fairly found questioning had immediately ceased initially upon Davis's request.

Davis also points to Teets's photograph, which Stratmann asked Davis if he recognized. The district court found Davis was shown the photograph *before* he invoked the right to silence. Davis contends this was clear error. The district court acknowledged the "testimony is somewhat unclear on the timeline of events" but "there is enough evidence in the record to support Judge Smith's finding that [Davis] was shown a picture of Teets before he invoked his right to silence." DE 104, Dist. Ct. Order, Page ID 442 n.6. We find no clear error with the district court's determination of this fact.

Davis also argues that Stratmann's "updates" about the case were the functional equivalents of interrogations. "'[I]nterrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). "[T]he *Innis* definition of interrogation is not so broad as to capture within *Miranda*'s reach all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relat[ed] to those charges." *United States v.*

*Collins*, 683 F.3d 697, 703 (6th Cir. 2012) (citation omitted). And "subtle compulsion" is not equivalent to "interrogation." *Innis*, 446 U.S. at 303. Stratmann's comments about search warrants and the police stopping Davis's girlfriend were declaratory statements about the evidence related to Davis's charges. *See Collins*, 683 F.3d at 703. Over a course of about two hours, Stratmann made "a few off hand remarks." *Innis*, 446 U.S. at 303. He did not carry "on a lengthy harangue" nor say anything "particularly 'evocative.'" *Id.* Under these circumstances, the district court did not err in finding Stratmann's comments about the investigation were not interrogations. It is also important to note that the government did not seek to introduce any evidence about exchanges between Stratmann and Davis at the Warsaw location.

Around 1:00 p.m., Davis asked Stratmann to speak in a more private location. Davis was transferred to the Central Vice Unit, was read his *Miranda* rights by Baker, signed a written waiver, and then participated in a video recorded interview.

Davis now argues that his recorded statement should have been suppressed because it was tainted by Stratmann's remarks at the Warsaw location. As the district court found, the record does not support a finding that the recorded statement was tainted by Davis's earlier exchange with Stratmann.

Davis waived his *Miranda* rights immediately before making his recorded statement. The government bears the burden of proving a *Miranda* waiver was made knowingly and voluntarily. *Bachynski v. Stewart*, 813 F.3d 241, 249 (6th Cir. 2015); *United States v. Jones*, 205 F. App'x 327, 334 (6th Cir. 2006). The district court noted there was no evidence suggesting the waiver was involuntary. And Baker, an officer who did not interact with Davis at the Warsaw location, confirmed Davis could read and write before reading the waiver out loud, with Davis nodding along. This case is not one of "repeated rounds of questioning" used to "undermine the will of the

person being questioned." *Mosley*, 423 U.S. at 102. And there is no indication in this record that Stratmann was attempting "to wear down [Davis's] resistance and make him change his mind." *Id.* at 105 – 06. The district court properly found that Stratmann's questions and comments were not so coercive as to have improperly influenced Davis in initiating a request to talk and in waiving his *Miranda* rights before a different officer in a new location. As Davis knowingly and voluntarily waived his *Miranda* rights before making his recorded statement, the district court did not err in denying Davis's motion to suppress.

**B**

Davis also argues that the district court erred in sentencing him as a career offender. We need not reach his numerous arguments because any error in applying the career offender enhancement was harmless.

"[I]f a procedural sentencing error occurs, that error is not subject to remand for resentencing if the error is harmless." *United States v. Davis*, 751 F.3d 769, 773 (6th Cir. 2014). "Sentencing errors are harmless where this court is convinced that the 'error at sentencing did not cause the defendant to receive a more severe sentence' than would have existed without the error." *Id.* (quoting *United States v. Gillis*, 592 F.3d 696, 699 (6th Cir. 2009)). The government bears the burden of demonstrating a sentencing error was harmless. *Gillis*, 592 F.3d at 699.

Even without the career offender enhancement, Davis's offense level was 34 and his criminal history category was VI. "Errors that do not affect the ultimate Guidelines range or sentence imposed are harmless and do not require resentencing." *United States v. Faulkner*, 926 F.3d 266, 275 (6th Cir. 2019). Davis concedes the Guidelines range would have been the same absent the career offender enhancement: 262 to 327 months. Still, he argues the government cannot meet its burden to show the error was harmless because the district court did not explicitly

say it would have imposed the same sentence absent the career offender enhancement, relied on his status as a career offender, and mentioned Davis's Guidelines range could have been 360 to life if Count 1 was a predicate offense.

In sentencing, the district court said, "You are a career offender, no question, under the law." DE 234, Tr., Page ID 2250. However, he also recognized Davis's criminal history category would have been the same, without or without the career offender enhancement. He explained, "[s]ome individuals are career offenders and are Category 6 defendants because of their career offender status [but] [e]ven without the career offender status, you would be a Category 6." *Id.* at 2249. Still, Davis argues his career offender status impacted the sentence, pointing to the district court's discussion of *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019)[2]:

> But for *Havis* and the lack of sentencing commissioners available to amend the guidelines, I think the conspiracy count would likely have been a career offender predicate offense so the guidelines would be 360 to life. They're not 360 to life. I found them to be 262 to 327, and I think that's the appropriate guideline range for you.

DE 234, Tr., Page ID 2253. Davis argues the district court "mentioned that fact in order to benchmark its chosen sentence—of 288 months—within the context of how serious Davis's offense would have been had *Havis* not intervened." CA6 R. 41, Appellant Br., at 39. But the district court explicitly found 262 to 327 months was the appropriate Guidelines range for Davis. And the district court did not sentence Davis to the high end of that range, despite its comment about "360 to life."

As the Guidelines range would have been the same with or without the career offender enhancement (which the district court recognized), the district court thoroughly considered the § 3553(a) factors, and the district court chose a sentence in the lower middle of the range, the

---

[2] In *Havis*, this court held that for the career offender enhancement, "controlled substance offense" did not include attempt crimes. 927 F.3d at 387.

government has met its burden to show any sentencing error in applying the career offender enhancement was harmless. *See United States v. Castro*, 960 F.3d 857, 867 (6th Cir. 2020); *Faulkner*, 926 F.3d at 275.

Davis's motion to suppress was properly denied as his written *Miranda* waiver and subsequent recorded statement were not improperly tainted by Stratmann's comments and questions after Davis initially invoked the right to silence. As to his sentencing, any error in applying the career offender enhancement was harmless. Therefore, we affirm the district court.

KAREN NELSON MOORE, Circuit Judge, dissenting. I disagree that Davis's *Miranda* rights were "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 104 (1975) (quoting *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)).

About half an hour after Davis invoked his right to remain silent to Stratmann, that officer reapproached Davis, who remained handcuffed in the same booking area where Stratmann had left him. R. 104 (Mem. Op. & Order at 3 n.2) (Page ID #428). Over the next two hours, Stratmann provided a stream of updates, informing Davis that his house would be searched, that his girlfriend had been stopped by police, and that "he had the opportunity to speak to other investigators handling the case." R. 104 (Mem. Op. & Order at 4) (Page ID #429); R. 87 (Mot. to Suppress Tr. at 69–70) (Page ID #296–97). Amidst these updates—as the government concedes—Stratmann violated Davis's *Miranda* rights, interrogating him about how he had acquired cash found in his car. Gov't Br. at 17–18. At the end of this two-hour stretch, Davis buckled and requested to speak with officers at a different location. R. 104 (Mem. Op. & Order at 4) (Page ID #429). Stratmann accompanied Davis to the interview, interjecting comments and questions throughout. R. 86-8 (Video of Def.'s Statement).

"*Mosley* requires an examination of whether the officers' conduct demonstrates a failure to respect fully the defendant's right to cut off questioning, thereby indicating an 'effort[ ] to wear down [the defendant's] resistance and make him change his mind.'" *Davie v. Mitchell*, 547 F.3d 297, 309 (6th Cir. 2008) (quoting *Mosley*, 423 U.S. at 105–06). Although Stratmann's updates may not in themselves violate *Miranda*, they cannot be disentangled from Stratmann's impermissible post-invocation interrogation of Davis. Coupled with the brief timespan, the fact that Stratmann's probing about the money involved the same crime about which Davis had already

invoked his *Miranda* rights, and that Stratmann was present at the following interview, I cannot conclude that Stratmann respected Davis's decision to cut off questioning. I respectfully dissent.