*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0373p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

　　　　　　*Plaintiff-Appellee,*

　　*v.*

ANTONIUS COLEMAN,

　　　　　　*Defendant-Appellant.*

No. 09-5052

_____

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 08-20137-001—Samuel H. Mays, Jr., District Judge.

Argued: October 20, 2010

Decided and Filed: December 10, 2010

Before: GILMAN and GRIFFIN, Circuit Judges; ROSE, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Tyrone Jemal Paylor, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Daniel T. French, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Tyrone Jemal Paylor, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Daniel T. French, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

　　ROSE, D. J., delivered the opinion of the court, in which GRIFFIN, J., joined. GILMAN, J. (pp. 15–18), delivered a separate opinion concurring in part and dissenting in part.

_____

[*] The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

1

———————————

**OPINION**

———————————

ROSE, District Judge.  On September 10, 2008, Antonius Coleman ("Coleman") pled guilty to two counts of being a felon in possession of ammunition.  As a condition for the plea, the United States agreed, subject to certain conditions, to recommend full acceptance of responsibility and to dismiss a possession-of-marijuana count.  At sentencing, Coleman was given a four-level enhancement for possessing 23 live rounds of ammunition that facilitated or had the potential to facilitate a felony distribution of marijuana.  Coleman was given a two-level reduction for acceptance of responsibility, but the United States declined to make a motion for the third-level of reduction for acceptance of responsibility.

Coleman appealed the four-level enhancement for possessing the 23 rounds of live ammunition and the United States' refusal to make a motion for a third-level of reduction for acceptance of responsibility to this Court.  For the following reasons, we AFFIRM Coleman's sentence.

I.     BACKGROUND

The facts underlying the relevant criminal conduct in this case are not in dispute and are reflected in the Presentence Report (the "PSR").  On January 4, 2008, at approximately 9:50 p.m., Memphis Police Department Officers (the "Officers") responded to a 911 hang-up call at 4599 Scott Crossing, Apt. #4, a residence located in Memphis, Tennessee.  After arriving at the residence and knocking on the door several times, the Officers encountered Amanda Hensley ("Hensley") and her boyfriend Coleman, the Defendant-Appellant.

Hensley reported to the Officers that she had attempted to call 911 because Coleman had assaulted her and had refused to let her leave.  She also said that, after a fight the previous evening, she had ended her relationship with Coleman and left the residence.  She returned at approximately 2:00 a.m. the next morning.

When she returned early on January 4, 2008, Hensley said she encountered Coleman, who was waiting for her in the dark. Coleman prevented her from leaving the residence by, among other things, barricading the doors with furniture and confiscating her cellular phone and car keys. Hensley also said that Coleman had written derogatory words about her on the walls of the residence and that Coleman had physically assaulted her by pushing her and pulling her hair.

After speaking with Hensley at the door, the Officers entered the apartment and observed that it was in disarray. The Officers also observed, in plain view, a mirror with marijuana residue on it, several individual plastic baggies of marijuana and one live round of .380 caliber ammunition. Based upon these observations, Coleman was taken into custody and removed from the apartment.

After Coleman was taken into custody, Hensley signed a consent-to-search form. Upon searching the residence, the Officers recovered a large paper bag filled with marijuana and a box of .380 caliber ammunition with 22 live rounds from a drawer containing Coleman's underwear and socks. The Officers also recovered two digital scales covered with marijuana residue from the kitchen and $1,820 in cash from Coleman's person. Overall, the Officers recovered 23 live rounds of .380 caliber ammunition and 71.7 grams of marijuana from the apartment. Based on this recovery, Coleman was formally arrested.

Following Coleman's arrest, Hensley gave a written statement that Coleman had threatened and assaulted her in the past and that she had seen Coleman sell drugs and pills. Coleman also gave a written statement in which he denied possessing the ammunition or selling the marijuana recovered.

On April 15, 2008, Coleman was indicted by a grand jury that charged him with two counts of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g) and one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). On September 10, 2008, a change-of-plea hearing was held during which Coleman pled guilty to the two counts for possession of ammunition. As a condition of the plea, the United States agreed, subject to certain conditions, to

recommend full acceptance of responsibility and to dismiss count three for possession of marijuana with the intent to distribute.

In Coleman's Plea Agreement, the United States agreed to recommend full acceptance of responsibility credit pursuant to U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 3E1.1 (2003) with the following caveat:

> The Defendant understands that if the United States receives information between the signing of this agreement and the time of the sentencing that the Defendant has previously engaged in, or if he engages in the future, in conduct inconsistent with the acceptance of responsibility, including, but not limited to, participation of any additional criminal activities between now and the time of sentencing, this position could change.

Prior to sentencing, a PSR was prepared in which Coleman was initially assigned a base offense level of 24 and a criminal history category of IV. Coleman's base offense level was then increased four levels to 28 for possession of any firearm or ammunition in connection with another felony offense. The base offense level was then reduced by three for acceptance of responsibility. Coleman's offense level pursuant to the PSR, then became 25. Based upon a total offense level of 25 and a criminal history category of IV, the PSR recommended that Coleman was in an applicable guideline range of 84 to 105 months of imprisonment.

On November 26, 2008, the United States indicated that it had no objections either to the facts or calculations in the PSR. On December 22, 2008, Coleman objected to the four-level enhancement for possession of ammunition in connection with another felony offense. On December 24, 2008, an Addendum to the PSR concluded that a four-level enhancement was appropriate.

On December 30, 2008, a sentencing hearing was held. During this hearing, Hensley and Kimberly Houston ("Houston") one of the Officers, testified. When making contact with Hensley the day prior to the sentencing hearing, the United States learned, for the first time, that Coleman, prior to entering his guilty plea on September 10, 2008, had contacted Hensley multiple times using phones at the federal detention facility. Hensley told the United States that, during one of those phone conversations, Coleman

had stated, "you got me f--ked up" and "you are not going to be happy out there and I'm in here f--ked up." The United States then filed an amended position paper on the PSR requesting that Coleman's offense level be enhanced three-levels for obstruction of justice.

At the sentencing hearing, the court determined that under the plain language of U.S.S.G. § 2K2.1(b)(6) (2007) and Application Note 14(a), the 23 live rounds of ammunition facilitated or had the potential of facilitating a felony distribution of marijuana by Coleman. A four-level enhancement was given by the court.

The court then turned to the three-level enhancement for obstruction of justice proposed by the United States. The United States offered Hensley's testimony that described her relationship with Coleman and described various threats that Coleman had made to her. Hensley also provided details about the phone calls that she received from Coleman while he was incarcerated. She testified that she had been willingly conversing with Coleman for several months but that, when she refused to provide him with names and addresses of other criminals, he became angry and threatened her. Hensley also testified that, when making the calls, Coleman would instruct her not to use his name and would use another inmate's cell phone code or use three-way phone calls to avoid detection on the recordings. Hensley further testified that, after talking with Coleman, she believed that he was threatening her, which led her to change her phone number. She also said that she did not want to testify at the sentencing hearing because Coleman "might talk to somebody that would want to do something" to her and her daughter.

The United States then called Officer Houston who testified that she had responded to several domestic violence calls at Hensley's residence before the 911 call and that, after Coleman was taken into custody on January 4, 2008, Coleman instructed Hensley not to talk and threatened to kill her. Houston also testified that, when she spoke to Hensley immediately prior to the sentencing hearing, Hensley had said that "she was scared about testifying because the [D]efendant, Mr. Coleman, had called her making threats and was threatening her life." Houston described Hensley as "nervous and scared."

The United States then argued that Coleman's threats were an attempt to scare her into not testifying at any future hearing or trial. The United States further argued that Coleman's attempts to avoid detection on the detention-facility phones should also be considered. The court, however, rejected these arguments and determined that Coleman's conduct did not rise to the level of obstruction of justice.

The United States declined to make a motion for the third-level of acceptance of responsibility based upon the testimony of Hensley and Houston and a reading of the portion of the plea agreement addressing acceptance of responsibility. The court then awarded Coleman a two-level reduction for acceptance of responsibility, which resulted in a total offense level of 26 and a criminal history category of IV. Accordingly, Coleman was assigned a new applicable guideline range of 92 to 115 months.

Coleman was sentenced to 92 months of imprisonment and three years of supervised release on the two counts of possession of ammunition. As a condition of the plea, the United States dismissed count three of the indictment for possession of marijuana.

## II.     JURISDICTION

This is an appeal of a sentence in a criminal case. A Notice of Appeal was timely filed and this appeal is taken pursuant to 18 U.S.C. § 3742.

## III.     STANDARD OF REVIEW

This Court reviews a district court's sentence for both procedural and substantive unreasonableness. *United States v. Bowers*, 615 F.3d 715, 725 (6th Cir. 2010). Procedural unreasonableness includes "selecting a sentence based on clearly erroneous facts …." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007). Substantive unreasonableness exists where taking into account the totality of the circumstances, the factors found in § 3553(a), on a whole, do not justify the sentence imposed. *Id.* (citing *Gall*, 552 U.S. at 51).

When reviewing a sentence, this Court reviews the district court's factual findings for clear error. *United States v. Richardson*, 510 F.3d 622, 625 (6th Cir. 2007). Whether the facts found warrant the application of a particular guideline provision is a legal question reviewed de novo. *Id.*

When a defendant objects or raises an issue before the district court, the issue is reviewed on appeal for an abuse of discretion. *United States v. Simmons*, 587 F.3d 348, 353 (6th Cir. 2009). When reviewing for an abuse of discretion, the appeals court gives deference to the district court's decision. *Hardyman v. Norfolk & Western Railway Co.*, 243 F.3d 255, (6th Cir. 2001). Only if the appeals court is firmly convinced that the district court erred is there a abuse of discretion. *Id.*

When a defendant fails to object or raise an issue before the district court, the issue is reviewed on appeal for plain error keeping in mind "that the plain error exception to the contemporaneous-objection rule is to be used only in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Morrow*, 977 F.2d 222, 226 (6th Cir. 1992) (citation and internal quotation marks omitted). To reverse for plain error, a reviewing court must conduct four distinct analyses: (1) determine whether an error occurred in the district court; (2) if an error occurred, determine whether it was plain; (3) determine whether the plain error affected a substantial right; and (4) if all three exist, decide whether the plain error affected the fairness, integrity or public reputation of the judicial proceeding. *United States v. Thomas*, 11 F.3d 620, 629-30 (6th Cir. 1993). Finally, a plain error is one that is clear or obvious under current law, and an error that affects a substantial right is an error that affected the outcome of the district court proceedings. *Id.*

## IV.    DISCUSSION

Coleman raises two challenges to his sentence. We address each in turn.

**A.      Sentence Enhancement**

Coleman first argues that his possession of ammunition alone did not have the potential for facilitating his concomitant drug possession felony because simply possessing a bullet without a gun does not aid in the commission of drug possession. Thus, according to Coleman, his sentence should not have been enhanced pursuant to U.S.S.G. § 2K2.1(b)(6).

The government has the burden of proof to show a factual predicate for this sentencing enhancement by a preponderance of the evidence. *United States v. Ennenga*, 263 F.3d 499, 503 (6th Cir. 2001).  The relevant facts on this issue have been shown by the United States and are not in dispute.  Coleman was in possession of 23 live rounds of .380 caliber ammunition and was in possession of illegal drugs for the purpose of distribution.  Further, the ammunition was found in close proximity to the drugs.  The issue to be decided is whether or not ammunition standing alone can have the potential to facilitate the felony distribution of drugs.

The relevant Sentencing Guideline relates to increases to the base offense level for unlawful receipt, possession or transportation of firearms or ammunition and provides that, "[i]f the defendant used or possessed any firearm **or** ammunition in connection with another felony offense…, increase by 4 levels." U.S.S.G. § 2k2.1(b)(6). (Emphasis added.)  Application Note 14(A) to this Sentencing Guideline clarifies the meaning of "in connection with" by providing that subsection (b)(6) applies in general "if the firearm **or** ammunition facilitated or had the potential of facilitating another felony offense or another offense, respectively."  (Emphasis added.)

Thus, applying U.S.S.G. § 2K2.1(b)(6) and Note 14(A) thereto, Coleman should receive a four-level enhancement if he possessed any firearm **or** ammunition in connection with the drug trafficking.[1]  Coleman does not dispute the drug-trafficking

---

[1]U.S.S.G. § 2K2.1(b)(6) applies based upon its plain language. The dissent's interpretation of U.S.S.G. § 2K2.1(b)(6) appears to ignore the plain language. The dissent also relies upon an "implication" that it finds in Note 14(B). However, the majority finds no such implication in Note 14(B) which applies when a firearm is found, which is not the case here.

charge or that the ammunition was found in proximity to illegal drugs and drug paraphernalia. He does, however, dispute that the ammunition, alone, could have been used to facilitate a drug transaction.

A Judge of this Court has, referring to Webster's Third New International Dictionary, defined "facilitate" for purposes of U.S.S.G. § 2K2.1(b)(6) as to make easier or less difficult. *Richardson*, 510 F.3d at 629 (McKeague concurring). Thus, for U.S.S.G. § 2K2.1(b)(6) to apply, Coleman's possession of the ammunition in close proximity to the drugs must make drug trafficking easier or less difficult or have the potential to make drug trafficking easier or less difficult.

There is no binding caselaw directly on point. However the Eleventh Circuit has upheld a district court that applied U.S.S.G. § 2K2.1(b)(6) where only ammunition was found. *See United States v. Chappell*, 334 F. App'x 970, 973 (11th Cir. 2009) (unpublished) (holding that a district court is entitled to find that ammunition alone had the potential to facilitate felony possession of methamphetamine).

U.S.S.G. § 2K2.1(b)(6) is most often at issue in cases in which a defendant is found to possess a firearm and ammunition. When determining whether a defendant's possession of a firearm is "in connection with" drug trafficking, this Court has adopted the "fortress theory." *Richardson*, 510 F.3d at 626. The "fortress theory" provides "that a connection is established if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in [the defendant's] actual or constructive possession, are to be used to protect the drugs or otherwise facilitate a drug transaction." *Id.* (quoting *Ennenga*, 263 F.3d at 503 (6th Cir. 2001)). Further, U.S.S.G. § 2K2.1(b)(6) "applies if the firearm had some emboldening role in [a] defendant's felonious conduct." *United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009)(quoting *Ennenga*, 263 F.3d at 503)) (internal quotation marks omitted; alteration in original).

Applying the "fortress theory" reasoning, Coleman's possession of ammunition alone facilitated or had the potential to facilitate felony drug trafficking. Coleman's possession of the ammunition reduced or had the potential to reduce the difficulty of completing the felony drug trafficking. Not only was the ammunition easily accessible

and stored in close proximity to the illegal drugs, but the ammunition emboldened Coleman in the knowledge that he was one step closer to having a fully-loaded firearm to protect himself and his illegal drugs, and the ammunition potentially served notice to potential buyers that Coleman was a step closer to having a fully-loaded firearm.

In addition to applying this Court's "fortress theory," a plain reading of U.S.S.G. § 2K2.1(b)(6) and Application Note 14(A) supports a four-level enhancement for Coleman. Both U.S.S.G. § 2k2.1(b)(6) and Application Note 14(A) refer to firearms and ammunition using the disjunctive "**or**." If U.S.S.G. § 2K2.1 required that a firearm always be present in order for ammunition to facilitate, this section would use "and" between the terms firearm and ammunition or would only require that a firearm be present.

Coleman offers several arguments on this issue. First, he argues that there is no clear definition within the Guidelines of the meaning of "facilitated, or had the potential of facilitating." This is accurate. However, the Court has referred to Webster's dictionary here as it has in many other cases for a definition of "facilitate."

Coleman next argues that the underlying justification for the "fortress theory" is less compelling when confronted with a defendant who was only in possession of ammunition because it is unclear how ammunition alone can create a heightened possibility of danger during drug transactions. However, without the ammunition, an alleged drug dealer would have to take a step that otherwise would not have to be taken - obtaining ammunition for a gun. Thus, having the ammunition facilitates or makes easier the use of a firearm in a felony drug transaction.

Coleman next argues that the Guideline provision at issue here is a sentencing enhancement that was created in response to a concern about the increased risk of violence when firearms are used or possessed during the commission of a felony. *See e.g. United States v. Hurst*, 228 F.3d 751, 753 (6th Cir. 2000). The presence of ammunition increases the risk of violence because it puts the owner of the ammunition one step closer to having a loaded firearm. Thus, the Guideline is clear that an

enhancement is in order for the presence of a weapon **or** ammunition.  The Guideline does not require the presence of a weapon **and** ammunition.

Coleman next argues that violence was not more likely to occur in the present situation because ammunition without a firearm is merely a static object that can do little or no harm to anyone.  First, the Guideline does not talk about whether or not violence is more likely to occur, and its purpose is to address a concern about the increased risk of violence.  The Sentencing Guideline addresses the presence of a weapon **or** ammunition.  Also, applying Coleman's reasoning, an unloaded weapon would be a static object so only a loaded weapon could result in a four-level enhancement which is an absurd result and not the result intended by the Sentencing Guidelines.

Coleman's next argument is that the district court's application of the "emboldening" test is unpersuasive and an inappropriate "theoretical leap" because the district court's conclusion of exactly how the possession of ammunition alone would facilitate or embolden him was based upon pure speculation as to what might have happened in the future.  However, the district court's reasoning was based upon present and unchallenged facts as required by the applicable Guideline.  The speculation, if there was any, was but a mere example of why the applicable Guideline says weapon *or* ammunition instead of weapon **and** ammunition.

Coleman's final argument is that ammunition alone has no potential for making any other felony easier or less difficult to complete because, without a firearm, ammunition can do nothing.  Without accepting Coleman's premise that ammunition can do nothing without a firearm, this Court has already determined above that ammunition can facilitate the commission of a felony.

In conclusion, based upon an application of the "fortress theory" and a plain reading of U.S.S.G. § 2K2.1(b)(6) and Application Note 14(A), the four-level enhancement given to Coleman was legally correct.  Further, the Eleventh Circuit has already upheld a district court's application of the four-level enhancement where only

ammunition was found.   Finally, the district judge's fact-finding in this matter has not been shown to be clearly erroneous.

**B.     Sentence Reduction**

Coleman's second issue presented for review is that the district court erred in denying him the third level of a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b) because the government's justification for refusing to make the motion was arbitrary and unrelated to the timing of his Plea.  Coleman did not raise this issue below.  Thus, the district court's decision on this issue is reviewed for plain error. *Morrow*, 977 F.2d at 226.

U.S.S.G. § 3E1.1(b) provides that, upon motion by the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a guilty plea, thereby permitting the government to avoid preparing for trial, and if the defendant qualifies for a decrease due to acceptance of responsibility and the offense level is 16 or greater, the offense level will be decreased by 1.  Further, Application Note 6 to § 3E1.1 provides, in relevant part, that the one-level reduction may be granted only upon a formal motion by the government at the time of sentencing.

The Sixth Circuit has interpreted § 3E1.1, along with Application Note 6, to mean that the government's discretion to file the motion is limited only by an unconstitutionally impermissible motive or if it is arbitrary.  *United States v. Lapsins*, 570 F.3d 758, 770 (6th Cir. 2009). In *Lapsins*, the defendant sought a three-level reduction for acceptance of responsibility pursuant to § 3E1.1  The district court granted a two-level reduction, the government did not move for an additional one-level reduction, and *Lapsins* appealed.  On appeal, *Lapsins* argued that he was entitled to the third-level reduction because he had accepted responsibility and his decision to plead guilty permitted the government to avoid preparing for a trial.  *Id.* at 768.  This Court found that "the government may decline to move for a reduction under § 3E1.1(b) so long as the decision does not rest on a constitutionally impermissible factor and is not arbitrary." *Id.* at 770.  This Court then went on to conclude that the government believed

in good faith that *Lapsins* had not accepted responsibility. *Id.* at 771. As a result, the government's decision not to move for the reduction was not arbitrary and was thus permissible. *Id.*

In *Lapsins*, the government objected to any reduction for acceptance of responsibility, but the district court granted a two-level reduction based upon the defendant's statement of facts and guilty plea. However, the district court did not award the third level because the government did not move for the third level. The district court's decision was upheld by this Court.

In this case, Coleman's offense level was 16 or more and the Court found that he was entitled to a two-level reduction. The United States argued for no reduction because Coleman had obstructed justice. The district granted the two-level reduction because it determined that Coleman had not obstructed justice and had pled guilty prior to trial.

The United States then declined to move for the third-level reduction based upon the information that it had first received the day prior to the sentencing hearing from Hensley that Coleman had threatened her on the telephone in July of 2008. The decision not to move for a third-level reduction, according to the United States, was based upon its "genuine and good faith belief" that Coleman's threatening telephone call to Hensley in July of 2008 was inconsistent with acceptance of responsibility.

Coleman first argues that, because the conduct cited by the United States did not amount to obstruction of justice, its justification for refusing to move for the third level reduction was arbitrary. However, the reason given by the United States was not that Coleman's conduct was an obstruction of justice, although the United States argued unsuccessfully that it was. The reason given by the United States was that Coleman's actions indicated that he had not accepted responsibility. This justification was based upon a reasonable belief and was thus not arbitrary.

Coleman next argues, based upon this Court's ruling in *United States v. Robertson*, 260 F.3d 500 (6th Cir. 2001), that the government is required to move for the

third-level reduction so long as he can demonstrate that the offense level determined prior to consideration of acceptance of responsibility was 16 or greater and he timely notified the government of his intent to plead guilty. However, as this Court has later explained, the government may refuse to move for the third-level reduction so long as the government's reason for refusal is not based upon a constitutionally impermissible factor and is not arbitrary.

Coleman next argues that, where the government's justification for refusal to move for the third-level reduction is wholly unrelated to the timing of his plea as compared to preparation for trial, a court should show no deference to the government's contention that he did not fully accept responsibility unless the government objected to him receiving a reduction under § 3E1.1(a). This argument, too, is without merit. The court may show deference to the government's reasons for not seeking a third-level reduction even if the reasons have nothing to do with the timing between the plea and trial, so long as the refusal is not based upon a constitutionally impermissible factor and is not arbitrary.

Given that there was evidence presented that Coleman threatened Hensley and that Hensley was scared to testify at the sentencing hearing because of what Coleman might do to her, the United States had reason to believe in good faith that Coleman had not accepted responsibility. Applying this Court's reasoning in *Lapsins* to the present matter, the United States was not required to move for the third level reduction because its reason for not doing so was not arbitrary. The United States, in good faith, had reason to believe that Coleman had not accepted responsibility. Thus, there was no error by the district court, let alone a "plain error."

## V.    CONCLUSION

The trial court did not err in applying a four-level enhancement for possession of ammunition. The trial court also did not err in failing to grant the third-level reduction for acceptance of responsibility. For these reasons, we AFFIRM the judgment of the district court.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

GILMAN, Circuit Judge, concurring in part and dissenting in part. I agree that the district court did not err in failing to grant Coleman the third-level reduction for acceptance of responsibility under U.S.S.G § 3E1.1(b). The reasoning in Judge Rose's opinion on this issue strikes me as sound, and I therefore concur. On the other hand, I disagree with the majority's justification for applying the four-level enhancement under U.S.S.G. § 2K2.1(b)(6) for Coleman's possession of ammunition. I therefore respectfully dissent on this latter issue.

How the possession of nothing but bullets, absent a gun, facilitates or has the potential to facilitate the offense of possessing marijuana is beyond me. The sentencing transcript indicates that the district court also had difficulty concluding that ammunition alone had the potential to facilitate the marijuana offense. Although it ultimately applied the four-level enhancement, the district court acknowledged that having ammunition without a gun is "like having . . . kindling without the match. You can have the kindling all day long; but if you don't have the match, you can't start the fire."

The majority opinion sets forth two justifications for affirming the district court's determination. First, the majority asserts without explanation that the language of U.S.S.G. § 2K2.1(b)(6) is "plain." Maj. Op. at 9 n.1. The language of that section, however, is anything but plain in my opinion. Section 2K2.1(b)(6) specifies that the four-level enhancement should apply "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." Application Note 14(A) then defines the phrase "in connection with" to mean that "the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." Section 2K2.1(b)(6) thus requires that a court do more than blindly apply the four-level enhancement whenever ammunition is found in close proximity to illegal drugs. Instead, the district court must analyze, on a case-by-case basis, whether the proximity of

ammunition alone facilitated or had the potential to facilitate the drug offense. I therefore find that the language of U.S.S.G. § 2K2.1(b)(6) is far from plain.

The majority opinion's second justification for affirming the judgment of the district court boils down to saying that "the ammunition emboldened Coleman in the knowledge that he was one step closer to having a fully-loaded firearm to protect himself and his illegal drugs, and the ammunition potentially served notice to potential buyers that Coleman was a step closer to having a fully-loaded firearm." Maj. Op. at 10. But this "one step closer" argument does not withstand scrutiny. The record contains no evidence that Coleman had a gun anywhere around, and bullets alone could hardly embolden him or scare potential buyers who might be inclined to steal his marijuana.

Many things could in theory put a person "one step closer" to having a firearm, such as applying for a firearms permit, having a holster, possessing a laser scope, or earning money to be able to purchase a weapon. But only *actual possession of a firearm* would potentially "facilitate" drug dealing under this court's "fortress theory," because displaying bullets alone can cause no harm. On the other hand, displaying a gun would definitely intimidate someone intending to steal the seller's drugs. And this is true even if the gun is unloaded, because the person staring down the barrel of a gun has no way of knowing whether it is loaded or unloaded. The district court clearly recognized this point: "If I have a gun that is not loaded and I point my gun at you, you don't know whether my gun is loaded or not. If I have a bullet and I point my bullet at you, you know that I don't have a gun." This refutes the majority's contention that Coleman's reasoning leads to the "absurd result" that only a loaded gun could result in a four-level enhancement. Maj. Op. at 11. Coleman in fact does not make such an argument.

Section 2K2.1(b)(6) and Application Note 14(A) do, as the majority repeatedly emphasizes, refer to firearm and ammunition in the disjunctive. But Application Note 14(B), whose relevance the majority fails to acknowledge, links the fortress theory solely to the possession of a firearm. It reads as follows:

> Application When Other Offense is Burglary or Drug Offense.–Subsection[](b)(6) . . . appl[ies] . . . in the case of a drug

> trafficking offense in which a firearm is found in close proximity to drugs, drug manufacturing materials, or drug paraphernalia. In these cases, application of subsection[] (b)(6) . . . is warranted because the presence of the firearm has the potential of facilitating another felony offense . . . .

Application Note 14(B)'s limitation to a firearm implies that the fortress theory does *not* apply to the possession of ammunition. Unlike drug-trafficking cases where a firearm is found in close proximity to the drugs, there is no presumption of facilitation where ammunition alone is found. Rather, under Application Note 14(A), a district court must determine if the ammunition actually facilitated the commission of another felony offense.

This is not to say that the possession of ammunition alone could never facilitate another felony offense. The four-level enhancement under U.S.S.G. § 2K2.1(b)(6) could apply to the possession of ammunition alone, for example, where two conspirators plan to rob, say, a bank, with one to bring a gun and the other to bring the ammunition for the gun. In this hypothetical, the one possessing the ammunition could clearly be found to have facilitated the crime of bank robbery, and thus be subject to the four-level enhancement. But that is not the situation in the case before us.

As the majority notes, "[t]here is no binding caselaw directly on point." Maj. Op. at 9. The only case it can find that supports the enhancement under circumstances similar to those at hand is the unreported Eleventh Circuit case of *United States v. Chappell*, 334 F. App'x 970 (11th Cir. 2009). Maj. Op. at 9,12. But *Chappell* is a three-page per curiam opinion that contains no reasoning at all on the issue in question. The total analysis in *Chappell* on the application of U.S.S.G. § 2K1.1(b)(6) is the following:

> The record also supports the enhancement of Chappell's sentence for possessing ammunition in connection with another felony offense. A defendant is subject to a four-level enhancement if he "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6). The enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." *Id.* cmt. n. 14(A). The district court was entitled to find that the ammunition had the potential to facilitate Chappell's felony

possession of methamphetamine.    In the absence of a contrary interpretation from this Court or the Supreme Court, the district court did not plainly err by applying the enhancement.

*Id.* at 973 (alterations omitted).

The present case, therefore, is the first and only published decision in the entire country applying the four-level enhancement under U.S.S.G. § 2K2.1(b)(6) where the possession of ammunition alone is deemed to facilitate the crime of drug dealing. Because there appears to me no logical support for such a conclusion in this case, I respectfully dissent.