NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0515n.06
No. 16-6856

<table>
<tr><td colspan="2" align="center"><strong>UNITED STATES COURT OF APPEALS<br>FOR THE SIXTH CIRCUIT</strong></td><td align="center"><strong>FILED</strong><br>Sep 05, 2017<br>DEBORAH S. HUNT, Clerk</td></tr>
</table>

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| BRIAN L. POSLEY, JR., | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:   MERRITT, MOORE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.  Brian Posley pled guilty to being a felon in possession of ammunition and was sentenced to 70 months' imprisonment.  Posley now appeals the district court's application of a four-level enhancement to his base offense level for possessing the relevant ammunition "in connection with another felony offense" under USSG §2K2.1(b)(6)(B).  Because neither the district court's finding that Posley was engaged in a felony drug-trafficking offense nor its decision that Posley possessed ammunition in connection with that offense was in error, Posley's sentence stands.

On February 25, 2016, officers with the Chattanooga Police Department visited a house to execute an arrest warrant that had been issued for Posley due to his failure to appear in court and his violation of probation.  Once there, the officers asked the resident who opened the front door and another occupant to step outside, leaving Posley alone in the house.  The officers saw

Posley walk in front of a window and instructed him to exit the house. Upon arresting Posley pursuant to the warrant and searching him, the officers found a bag containing four 9mm bullets and cocaine in his front left pocket, as well as $700 in cash. The officers then searched the house, where they found marijuana and cocaine in the toilet. The toilet was located in a bathroom that corresponded to the location where the officers saw Posley walk across a window just before he exited the house. In total, the officers found 2.3 grams of crack cocaine, 2.6 grams of cocaine, and 40.5 grams of marijuana, and Posley confessed to the officers that the drugs were his.

A grand jury charged Posley with being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1), and Posley pled guilty to the offense. A probation officer prepared a presentence investigation report (PSR), which revealed that Posley had charges pending against him in state court for possessing drugs for resale during the February 25, 2016 incident. The PSR also stated that Posley was employed during only four of the thirty months preceding his arrest. The PSR placed Posley's base offense level at 20 and added a four-level enhancement under USSG §2K2.1(b)(6)(B) for Posley's possessing ammunition in connection with a felony drug-trafficking offense. After a three-point reduction for acceptance of responsibility, Posley's total offense level was 21. Combined with a criminal history category of V, the PSR calculated Posley's sentencing range at 70 to 87 months' imprisonment.

Posley's sole objection to the PSR involved the four-level enhancement for possessing ammunition in connection with a felony offense. After hearing arguments at the sentencing hearing, the district court overruled Posley's objection. The court held that "[g]iven the defendant's work history, the existence of the cash, the existence of the various types of drugs, and the amounts," the Government had met its burden of proving that Posley was involved in

drug trafficking. Furthermore, the court relied on our decision in *United States v. Coleman*, 627 F.3d 205 (6th Cir. 2010), to conclude that the close proximity between the ammunition and the drugs rendered Posley's possession of the ammunition "in connection with" the drug trafficking. The district court then sentenced Posley to 70 months' imprisonment. Posley now appeals.

The district court did not err by applying §2K2.1(b)(6)(B)'s four-point enhancement to Posley's base offense level. The enhancement is appropriate when "the defendant used or possessed any firearm or ammunition in connection with another felony offense." USSG §2K2.1(b)(6)(B) (2015). Application note 14(A) further describes that the enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." *Id.* comment. (n.14(A)). The district court did not clearly err when it determined that Posley possessed the drugs in his house and on his person for resale—a felony drug-trafficking offense—and correctly determined that the mere presence of ammunition in close proximity to the drugs facilitated, or had the potential to facilitate, that offense.

The Government presented sufficient, reliable facts to prove by a preponderance of the evidence that Posley possessed the drugs found during his arrest for resale. Contrary to Posley's assertion, more than "mere possession of the drugs . . . , coupled with abject speculation that his having $700 in cash 'must have' come from drug dealing," supports the district court's conclusion. First, the fact that Posley had three types of drugs supports an inference that the drugs were not for personal use. Furthermore, as the district court noted, the sentencing guidelines indicate that 40.5 grams of marijuana would create around 81 cigarettes. USSG §2D1.1, comment. (n.9). Posley objected to this weight calculation, noting that, because the marijuana was found in the toilet, it was weighed down with water  Regardless of whether the

40.5-gram figure was slightly inflated from water weight, however, the district court reasonably concluded that the amount of marijuana in Posley's possession "seem[ed] like quite a bit for [him] to not be distributing." The district court's conclusion that the $700 in cash in Posley's front pocket likely came from drug sales is also reasonable, given that Posley had barely been employed for the thirty months preceding his arrest. Finally, it was at least probative that, at the time of his sentencing, Posley had been charged in state court for possessing the very drugs at issue for resale. Considering all of these incriminating facts, it was not clear error for the district court to find that Posley held the drugs for resale, which constitutes a felony offense in Tennessee, *see* Tenn. Code Ann. § 39-17-417(a)(4), (g)(1)(2010).

The district court also properly relied on *United States v. Coleman*, 627 F.3d 205 (6th Cir. 2010), to hold that there was a sufficient nexus between the ammunition and the drugs to render §2K2.1(b)(6)(B)'s enhancement applicable. In *Coleman*, officers discovered ammunition and marijuana together in a defendant's residence. 627 F.3d at 208. After the defendant pled guilty to being a felon in possession of ammunition and was sentenced pursuant to §2K2.1(b)(6)(B)'s enhancement, he argued that his possession of ammunition, alone, could not have facilitated his felony drug-trafficking offense. In rejecting the defendant's challenge, we relied on the "fortress theory," under which "a connection is established if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in [the defendant's] actual or constructive possession, are to be used to protect the drugs or otherwise facilitate a drug transaction." 627 F.3d at 212 (alteration in original) (quoting *United States v. Richardson*, 510 F.3d 622, 626 (6th Cir. 2007)). We applied the fortress theory to ammunition and held that ammunition has the capacity to facilitate a drug-trafficking offense, as required under §2K2.1(b)(6)(B), whenever it is in close proximity to the drugs involved in the offense.

*See id.* at 212–13. Posley argues that our holding in *Coleman* is wrong, because it contradicts application note 14(B), which provides that the enhancement should apply "in the case of a drug trafficking offense in which a *firearm* is found in close proximity to drugs," USSG §2K2.1, comment. (n.14(B)) (emphasis added), but does not mention *ammunition* in close proximity to drugs. However, the dissenting opinion in *Coleman* raised this same point, *see* 627 F.3d at 217 (Gilman, J., dissenting), and the majority declined to follow it. Thus, *Coleman*'s holding that ammunition, alone, in close proximity to drugs can facilitate a drug-trafficking offense is binding precedent.

Posley's attempts to distinguish his case from *Coleman* are unavailing. In *Coleman*, the circumstances leading up to the officers finding ammunition and drugs in the defendant's house were irrelevant to our holding that the defendant possessed the ammunition "in connection with" a felony drug-trafficking offense. Thus, the different circumstances leading up to Posley's arrest are not relevant. Furthermore, despite Posley's argument that the drugs in the toilet were not "in close proximity" to the ammunition in his front pocket, the record supports a reasonable inference that Posley possessed the drugs found in the toilet together with the ammunition immediately before he exited the house. The officers saw Posley pass a window in the bathroom where the majority of the drugs were found before he stepped outside; Posley was likely trying to dispose of the drugs, while he possessed the ammunition, in the officers' presence. Thus, the district court did not clearly err in finding that all of the drugs—including the cocaine in Posley's pocket and the marijuana and crack cocaine in the toilet—were in close proximity to the ammunition.

Posley's reliance on *United States v. Shields*, 664 F.3d 1040 (6th Cir. 2011), is also misplaced. In *Shields*, we held that a district court erred by applying the §2K2.1(b)(6)(B)

enhancement when there was insufficient evidence to prove that the criminal defendant possessed a firearm "in connection with" a felony drug-possession offense. *See* 664 F.3d at 1042. We reasoned that, although the fortress theory can apply to drug possession—as opposed to drug trafficking—it would be easier to prove that a firearm in close proximity to drugs facilitated a drug-trafficking offense than it is to prove that a firearm in close proximity to drugs facilitated drug possession. *See id.* at 1044–45. We went on to hold that, because the defendant possessed a relatively small amount of drugs and asserted that the firearm was for self-protection, there was insufficient evidence to prove that his firearm possession was anything more than coincidental to his drug possession. *See id.* at 1045. Posley argues that those same mitigating factors are present in his case. However, even assuming that Posley's assertion is true, *Shields* is distinguishable, because the felony underlying Posley's sentence enhancement is drug trafficking, contrasted with the mere possession in *Shields*. As we recognized in *Shields*, "it is easier to see how a firearm," and in this case, ammunition, "facilitates drug trafficking transactions, than it is to see how a firearm facilitates the mere possession of controlled substances." *Id.* at 1046.

Finally, because the district court had sufficient, reliable evidence before it to impose the §2K2.1(b)(6)(B) enhancement, Posley's sentence did not violate his due process rights.

The judgment of the district court is affirmed.

**MERRITT, Circuit Judge, concurring, in which MOORE, J., joins.** I concur in this opinion only because the published opinion in *United States v. Coleman*, 627 F.3d 205 (6th Cir. 2010), is binding precedent. I actually agree with Judge Gilman's dissent in that case. Like Judge Gilman, I do not see how the ammunition in this case "facilitated" the underlying offense.