NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0557n.06

No. 18-3459

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,        )
                                 )
        Plaintiff - Appellee,    )
                                 )      **FILED**
v.                               )      Nov 04, 2019
                                 )      DEBORAH S. HUNT, Clerk
TAYLOR KARAS,                    )
                                 )      ON APPEAL FROM THE
        Defendant - Appellant.   )      UNITED STATES DISTRICT
                                 )      COURT FOR THE
                                 )      SOUTHERN DISTRICT OF
                                 )      OHIO

BEFORE: SILER, GIBBONS, and DONALD, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Twenty-five-year-old Taylor Karas, with her co-defendants, kidnapped and robbed a seventy-nine-year-old man in Ohio. After Karas lured the victim to her hotel room, her co-defendants arrived at the hotel, armed. Using the victim's car, the defendants drove the victim to an ATM and multiple stores, used the victim's credit card to make purchases, and ultimately abandoned him at a store in Indiana. Karas was charged with and convicted of kidnapping and sentenced to forty-two months' incarceration, well below the U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range.

Karas now appeals her sentence, arguing that it is procedurally and substantively unreasonable. Because the district court properly calculated the Guidelines range and did not abuse its discretion in declining to grant Karas's request for a two-level minor role reduction, we find that the sentence is procedurally reasonable. Because the district court did not abuse its

discretion in weighing the 18 U.S.C. § 3553(a) factors, we find that the sentence is substantively reasonable. Accordingly, we affirm.

I.

Twenty-five-year old Taylor Karas and her then-boyfriend, James Marriott, agreed to rob a seventy-nine-year-old man, identified as J.P. Karas had previously dated J.P.'s grandson and had borrowed money from J.P. in the past. On October 6, 2016, Karas texted J.P. and asked to borrow money. J.P., expecting a sexual encounter in return, agreed and suggested they meet at a local restaurant. After Karas asked that they meet at the Super 8 Motel in Vandalia, Ohio, J.P. drove to the motel, parked his Ford Explorer in the lot, and entered Karas's room.

Shortly thereafter, Karas texted Marriott that J.P. had arrived. Marriott, brandishing a gun, burst into the room, along with a second man, Andrew Azzalina. Marriott and Azzalina searched J.P. and took approximately $300 and his phone. Marriott also took J.P.'s credit and debit cards and demanded that J.P. tell him his personal identification number ("PIN"). When J.P. said he could not remember his PIN, Marriott cocked his gun and threatened to kill J.P., calling him a liar.

Despite not knowing the PIN, Marriot decided to take J.P. to an ATM to withdraw money. Marriott, Azzalina, and Karas found the keys to J.P.'s car and forced J.P. into the front seat. With Karas and Marriott in the back seat, Azzalina drove to a bank in Englewood, Ohio. When J.P. repeated that he could not remember his PIN, Marriott inserted the card into the ATM and threatened to kill him while Karas attempted to guess the PIN.

Unable to withdraw money, Marriott, Azzalina, and Karas transported J.P. to a Dollar General in Lewisburg, Ohio. While Marriott and Karas went inside to purchase a cell phone and a box of Honey Buns, totaling $97, with J.P.'s credit card, Azzalina remained in the car with J.P.

Azzalina then drove to the Dick's Sporting Goods store in Richmond, Indiana, crossing state lines. Again, Marriott and Karas went into the store while Azzalina held J.P. in the car. Marriott and Karas attempted to charge $1,400 worth of merchandise to J.P.'s credit card. The store clerk requested to see the credit card holder's driver's license to complete the purchase, so Marriott called Azzalina to bring J.P. into the store. J.P. signed for the purchase and, at some point during the transaction, mouthed "call the police" to the store clerk. Fearing that J.P. had successfully requested help from the store clerk, Karas and Marriott fled the store, leaving J.P. behind. Karas, Marriott, and Azzalina then drove J.P.'s car back to Ohio.

Police arrested Marriott and Azzalina a few days later. Karas turned herself in on October 20, 2016. As relevant here, a federal grand jury indicted Karas on October 27, 2016 for aiding and abetting a kidnapping.[1] Karas pled guilty to kidnapping on January 20, 2017.[2]

The Probation Office prepared a Presentence Investigation Report ("PSR") recommending a Guidelines range of 151 to 188 months' incarceration. Applying Guidelines § 2A4.1 for kidnapping, the PSR established that Karas had a base offense level of 32. The PSR also found two separate two-level enhancements applicable. One two-level enhancement was for the use of a dangerous weapon, pursuant to Guidelines § 2A4.1(b)(3). The second enhancement was a victim-related adjustment applicable when the defendant knew or should have known that the offense involved a vulnerable victim. The PSR did not adjust for Karas's role in the offense because she was not the organizer of the criminal activity; nor was she a "minor participant" due to her "significant role" in the criminal activity. Finally, applying a three-level downward

---

[1] Karas was only named in counts one and five of the indictment. Count one was for aiding and abetting a kidnapping, in violation of 18 U.S.C. § 1201(a)(1) and (2). Count five was for aiding and abetting the knowing possession and transport across state lines of a stolen motor vehicle, in violation of 18 U.S.C. § 2313 and *Pinkerton v. United States*, 328 U.S. 640 (1946).

[2] Karas also pled guilty to count one and the government agreed to dismiss count five.

adjustment for acceptance of responsibility, the PSR calculated a total offense level of 33. The PSR also determined that Karas was within criminal history category II because of prior, relatively minor drug- and alcohol-related charges. With the adjusted offense level of 33 and the criminal history category of II, the Guidelines sentence range was 151 to 188 months. The PSR recommended a downward departure to a sentence of seventy-two months under the § 3553(a) factors, based in part on Karas's commitment to a drug addiction treatment program.

At the request of both parties, Karas's sentencing hearing was continued for over a year and she remained out on bond during this time. Prior to the sentencing hearing, the parties submitted supplemental memoranda detailing the aggravating and mitigating factors related to Karas's sentencing. Karas submitted two sentencing memoranda to the district court.

In the first memo, filed in August 2017, Karas argued that a reduced sentence was warranted because: (1) she acted under duress because Marriott was so controlling; (2) she was under the influence of opiates; (3) she had previously been the victim of an attempted kidnapping; (4) the victim had provoked the offense; (5) she had a history of sexual abuse and addiction; and (6) she was experiencing anxiety, depression, and PTSD. Without directly linking her argument to the facts of this case, she also discussed research showing that community-based treatment programs were more effective in decreasing recidivism than prison-based programs. As to the Guidelines role reduction, she contended that she had "a limited, though not minor role, in the offense" and asked the court "to permit the fully allowable reduction based upon her minimal role." DE 85, Sealed Def.'s Sentencing Mem., Page ID 414. She made no other mention of the Guidelines' minor role provision in her memorandum and did not dispute the PSR's finding that her conduct did not warrant a minor role downward adjustment.

In a supplemental memorandum filed in March 2018, Karas argued that her "post-conviction rehabilitation" warranted "a further departure from the U.S. Probation Officer's adjustment." DE 109, Sealed Def.'s Supp. Sentencing Mem., Page ID 512–513. She noted that she had completed in-patient drug treatment and had remained in recovery, excluding a relapse in December 2016. She also contended that a departure was warranted because she had worked at Red Lobster since September 2017, received good performance reviews, and been enrolled in community college, working toward an associate degree in counseling, since January 2017. Karas also argued in the supplemental memo that her conduct was aberrant. She explained this "misadventure" occurred and "circumstances got out of control" because of her fear of and loyalty to Marriott. *Id.* at 515. She further argued that she had diligently continued to work and attend school despite a pregnancy "end[ing] during its second trimester in December 2017" and subsequent medical treatment. *Id.* at 513–14.

In a motion for substantial assistance filed in May 2017 (following the close of Marriott's trial), the government requested that the court grant a downward departure from the Guidelines for Karas's cooperation against Marriott.

The government also filed a sentencing memorandum in May 2017, urging the district court to impose a term of imprisonment upon Karas but "not the lengthy sentence that the advisory Guidelines suggest." DE 119, Gov't Sentencing Mem., Page ID 556. The government noted that Karas had serious addiction issues, as indicated by her history of drug- and alcohol-related misdemeanor convictions, and that these issues contributed to her involvement in the kidnapping. While her generally positive performance on bond hinted that she could become a better person, the government explained, the high risk of her becoming unwilling or unable to deal with these issues in the future would "unquestionably" lead her to reoffend. *Id.* at 557. The government

contended that the risk of recidivism posed a danger to the community and her son. Although Karas played an "integral role," the government found that some downward departure was warranted because Karas's involvement and criminal history were less troubling than those of her co-defendants. *Id.* at 557–58.

The district court held a sentencing hearing on May 4, 2018. Karas took "full responsibility for [her] actions" and acknowledged that she abused the victim's trust by putting him "into a situation [she] knew wasn't the safest and that could turn out bad." DE 154, Sentencing Hearing Tr., Page ID 717–18. She apologized not only to the victim, but also to her son and grandparents, who cared for her son. She explained that her drug addiction motivated her conduct in this case, but that she had since "been clean for 17 months," was caring for her son, holding down a job, and pursuing a certificate in chemical dependency counseling that she planned to complete by the fall semester of the next year. *Id.* at 718–21.

The district court then turned to an analysis of the Guidelines. Largely in accordance with the PSR, the district court calculated a base offense level of 32 for aiding and abetting a kidnapping, plus two levels for use of a dangerous weapon, and a three-level downward adjustment for acceptance of responsibility, which resulted in a total offense level of 31. The district court then rejected Karas's argument for a minor role adjustment, finding that she was "by no measure . . . a minor player in what happened," because the kidnapping would not have occurred if Karas had not "lured the victim to the hotel" under false pretenses. *Id.* at 726–27. The district court also decided against applying the two-level vulnerable victim enhancement recommended in the PSR. Finally, considering Karas's criminal history, the district court found that the advisory range was 121 to 151 months' imprisonment.

The district court next considered the § 3553(a) factors. As to mitigating factors, the district court considered Karas's troubled background and current circumstances—including a difficult home life, experience of sexual abuse as a child, and long history of substance abuse and minor "drug fueled" offenses as an adult. *Id.* at 727–29. The district court also noted that Karas was under the influence of drugs during the kidnapping and felt controlled by Marriott. The district court considered Karas's progress, "remorse," and "insight" while out on bond. *Id.* at 725. It noted her devotion to her young son, recent employment, completion of in-patient treatment and ongoing outpatient treatment, her enrollment in a junior college's substance abuse certificate program, and her goal of becoming a social worker.[3]

The court balanced these mitigating factors with the public interest in "punishment that both promotes respect for the law, while at the same time not minimizing or trivializing the offense." *Id.* at 733. Describing the offense as "serious," the district court explained that Karas took advantage of her relationship with the victim by luring him into an armed confrontation with young men. *Id.* at 732–33. The district court explained that Karas could become a danger to the public if she relapsed because "she is subject to being manipulated and to committing criminal conduct." *Id.* at 733.

Summarizing its analysis, the district court gave Karas "the benefit of the doubt" in concluding "that her rehabilitation was sincere." *Id.* at 735–36. But the court still emphasized that "a sentence of some length" was warranted because of the seriousness of the offense, the public's interest in fair punishment, and the nature of the crime. *Id.* at 735–36. The district court sentenced

---

[3] The district court rejected Karas's request for departures from the Guidelines based on her claims that the victim was culpable, her conduct was aberrant, and that she acted under coercion or duress from Marriott. But the district court indicated it would consider Marriott's influence over Karas, as well as the out-of-character nature of Karas's conduct, as part of its § 3553(a) analysis. In addition, the court indicated that it considered Karas's cooperation with the government. On appeal, Karas does not challenge these aspects of the district court's Guidelines or sentencing analysis.

Karas to forty-two months' imprisonment and five years' supervised release and ordered restitution jointly and severally with her co-defendants. The court concluded by asking Karas's counsel whether there were any procedural or substantive objections to the sentence, and Karas's counsel replied that there were none.

Karas timely appealed her sentence.

II.

When reviewing a sentence for procedural reasonableness, we generally utilize the abuse-of-discretion standard. *United States v. Coleman*, 627 F.3d 205, 211 (6th Cir. 2010). We consider whether "the district court 'correctly calculat[ed] the applicable Guidelines range' which are the 'starting point and initial benchmark' of its sentencing analysis." *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007) (alteration in original) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). In considering the district court's calculation of the Guidelines range, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *Id.* While the district court's ultimate decision about a person's role is a legal conclusion, such a decision relies heavily "on factual nuances." *United States v. Washington*, 715 F.3d 975, 983 (6th Cir. 2013). Thus, because "the district court is in the best position to know whether [the defendant] was a leader" or played a minor role, we review the district court's conclusion about a defendant's role under a "deferential" standard of review. *Id.* ("Accordingly, we hold that . . . review of the legal conclusion that a person is an organizer or leader . . . is also deferential.").

If we determine that the "district court's sentencing decision [is] procedurally sound, we must 'then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" *Bolds*, 511 F.3d at 581 (quoting *Gall*, 552 U.S. at 51).

III.

On appeal, we review the sentence imposed by the district court "for both procedural and substantive unreasonableness." *Coleman*, 627 F.3d at 210. "Our review of sentences for reasonableness is not to be confused with the district court's task to impose a sentence that is 'sufficient, but not greater than necessary, to comply with the purposes' of sentencing set forth in 18 U.S.C. § 3553(a)." *Bolds*, 511 F.3d at 578. Because the district court did not abuse its discretion on either ground, we affirm.

A.

On appeal, Karas primarily claims that her sentence was procedurally unreasonable because she should have received a two-level minor role reduction under the Guidelines. We find that the district court did not abuse its discretion in declining to grant the minor role reduction.

Guidelines § 3B1.2(b) allows for a range of adjustments for defendants who are "substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2, Application Note 3. It therefore provides for a two-level decrease "[i]f the defendant was a minor participant in [the] criminal activity." *Id.* § 3B1.2(b). The two-level minor role reduction applies to those who are "less culpable than most other participants in the criminal activity." *Id.* § 3B1.2, Application Note 5. "Although [a] defendant may be less culpable than some of his coconspirators, this does not require a finding that he was *substantially* less culpable than the others." *United States v. Miller*, 56 F.3d 719, 720 (6th Cir. 1995).

Before the district court, the defendant bears the burden of proving, by a preponderance of the evidence, the factors that justify a minor role reduction. *Id.* The district court's inquiry into the minor role reduction is "heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, Application Note 3(C). The district court may consider a non-exhaustive list of factors,

including the defendant's: (1) understanding of the "scope and structure" of the crime; (2) participation in the planning or organizing of the crime; (3) "exercise[]" of decision-making authority or "influence[]" over the exercise of decision-making authority; (4) acts performed and responsibility or discretion over those acts; and (5) possible benefit from the crime. U.S.S.G. § 3B1.2, Application Note 3(C)(i)-(v).

Based on these factors and Karas's perfunctory request for the reduction, we conclude that the district court did not abuse its discretion in denying the minor role adjustment. Here, as the district court noted, Karas took advantage of her relationship with the victim to lure him to the hotel rather than the restaurant where he wished to meet. As Karas herself explained, she put the victim "into a situation [she] knew wasn't the safest and that could turn out bad." DE 154, Sentencing Hearing Tr., Page ID 718. While she may not have exactly predicted the "extent" of the criminal activity, *id.*, she intentionally lured him to the hotel "for the purpose of robbing" him, DE 50, Plea Agreement, Page ID 155. Karas failed to present other evidence that she did not grasp the goals of the criminal activity.

In the statement of facts attached to the plea agreement, Karas admitted that she actively participated in each phase of the criminal activity. She "contacted [J.P.] and asked to borrow money from him." *Id.* at 155. She notified Marriott when J.P. arrived at the hotel. She was one of "the three robbers [who] then moved [J.P.] from the motel to the Ford Explorer" and later "forced [J.P.] to accompany them various places in western Ohio and eastern Indiana." *Id.* At the bank, she provided possible PIN numbers to access the victim's bank account.

She also stood to profit from the criminal activity. She and Marriott entered the Dollar General and made purchases on the victim's credit card. At Dick's Sporting Goods in Indiana, she and her co-defendants "made [J.P.] use his credit card and purchase clothing and other items for

them." *Id.* These facts demonstrate that the district court did not abuse its discretion in concluding that a minor role reduction was not warranted.

In her brief on appeal, Karas presents more detail about her role in the offense than she did in the district court. Her main argument is that "it was Marriott who developed this plan and executed it," and it was Marriott who possessed the gun. CA6 R. 31, Sealed Appellant Br., at 26. She contends that while she "was the connection to the victim in this case, it was not her idea to rob him." *Id.* Karas provides no citations to the record for these assertions. And even if she did present more support, it would not warrant a minor role reduction. "A defendant does not become a minor participant simply because others planned a scheme and made all the arrangements for its accomplishment." *Miller*, 56 F.3d at 720. Here, even if Karas "may be less culpable than some of her coconspirators," a finding that she was "*substantially* less culpable than the others" is not warranted. As described above, Karas admitted that she understood the plan to rob the victim and was an active participant in each stage of the kidnapping.

The district court did not abuse its discretion in declining to grant a minor role reduction based on the record before it.

B.

A sentence is substantively reasonable when it is "sufficient, but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553(a). *United States v. Presley,* 547 F.3d 625, 630–31 (6th Cir. 2008) (quoting 18 U.S.C. § 3553(a)). "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser,* 514 F.3d 508, 520 (6th Cir. 2008). On appeal, we consider the "totality of the circumstances, including the extent of any

11

variance from the Guidelines range." *Bolds*, 511 F.3d at 581 (quoting *Gall*, 552 U.S. at 51). Even if we reasonably would have imposed a different sentence, we must "afford due deference to the district court's decision to determine the appropriate length of defendant's sentence, so long as it is justified in light of the relevant § 3553(a) factors." *United States v. Herrera-Zuniga*, 571 F.3d 568, 591 (6th Cir. 2009).

The defendant bears the burden of showing substantive unreasonableness. *United States v. Smith*, 881 F.3d 954, 960 (6th Cir. 2018). A sentence within the Guidelines range is presumed to be substantively reasonable. *Herrera-Zungia¸* 571 F.3d at 590. When a below-Guidelines sentence is imposed, the defendant's burden, while not impossible to meet, is "even more demanding." *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008).

Section 3553(a)(2) also directs the sentencing court to consider the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence, and protect the public. A proper sentence, in other words, may not minimize the seriousness of the defendant's conduct. *See, e.g.*, *United States v. Robinson*, 778 F.3d 515, 519 (6th Cir. 2015) (reversing a sentence of one night for possession of child pornography because of the district court's "failure to take into account the seriousness of Defendant's particular crime [and] the lack of serious consideration for the need for deterrence.").

Karas does not meet this "heavy burden." *United States v. Greco*, 734 F.3d 441, 450 (6th Cir. 2013). The district court did not abuse its discretion in weighing the § 3553(a) factors when it imposed a sentence that fell significantly below the Guidelines range. Karas briefly claims on appeal that her sentence should be shortened because of several considerations, namely her post-offense rehabilitation, acceptance of responsibility, care for her son, education, and employment.

But the district court expressly weighed these factors and did not abuse its discretion in considering them, so a reversal of the sentence imposed by the district court is not warranted.

The district court explained that the "nature and circumstances" of the offense were egregious and counseled for "a committed sentence of some length." DE 154, Sentencing Hearing Tr., Page ID 736; *see* 18 U.S.C. § 3553(a)(1) ("The court . . . shall consider the nature and circumstances of the offense . . . ."). Taking advantage of her personal relationship with the seventy-nine-year-old victim, Karas lured him to a hotel knowing that he would be robbed. She placed him in danger—kidnapping him with the help of two men, one of whom was armed. As a result of the kidnapping, the district court noted, the victim suffered ongoing emotional distress.

The district court also did not minimize the seriousness of the offense. *See Robinson*, 778 F.3d at 519. The district court weighed "the interest of the public and the Court," DE 154, Sentencing Hearing Tr., Page ID 736, "considered the interests of the public in preventing Ms. Karas and others similarly situated from committing similar crimes in the future," *id.* at 734, and considered the deterrent effect of the sentence, *id.*

In addition to considering the nature and circumstance of the crime and the need to provide just punishment, the district court paid close attention to the "history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). In doing so, it weighed many of the allegedly mitigating circumstances that Karas now argues required the imposition of a shorter sentence. The district court noted Karas's history of addiction and relatively minor substance-related criminal history but lauded her efforts to recover from addiction and her work helping others in recovery. The court also considered Karas's acceptance of responsibility, assistance in her co-defendant's case, family situation, employment status, and education efforts.

The cases cited by Karas imply that a district court may reduce a sentence based upon such factors—including post-conduct rehabilitation and substance abuse. *See, e.g.*, *United States v. Hairston*, 502 F.3d 378, 381–83 (6th Cir. 2007); *United States v. Maddalena*, 893 F.2d 815, 817–818 (6th Cir. 1989). That is exactly what the district court did here. These cases do not require that sentencing courts reduce a sentence by a specific, proscribed amount; rather, they provide courts with discretion to reduce sentences when appropriate. Karas's argument that the court did not adequately consider the § 3553(a) factors fails to rebut the presumption of substantive reasonableness.

## IV.

Because the district court did not abuse its discretion in imposing a sentence of forty-two months' imprisonment, we affirm.